1997 ME 55

Christine J. McCULLOUGH

v.

VISITING NURSE SERVICE OF SOUTHERN MAINE, INC.

Supreme Judicial Court of Maine.

Argued Feb. 6, 1997.

Decided March 31, 1997.

Gregory O. McCullough (orally), Sanford, Jeffrey A. Thaler, Berman & Simmons, Lewiston, for plaintiff.

Janet P. Judge, Timothy O'Brien (orally), Verrill & Dana, Portland, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and LIPEZ, JJ.

ROBERTS, Justice.

[¶ 1] Christine McCullough appeals from the summary judgment entered in the Superior Court (York County, *Crowley, J.*) in favor of the Visiting Nurse Service of Southern Maine, Inc. (VNS) on various claims brought by McCullough based on her termination as an employee of VNS. McCullough contends that there are genuine issues of material fact (1) whether she was an employee at will and (2) whether she was defamed by VNS. We affirm the judgment.

[¶ 2] In 1991, McCullough, a registered nurse, was hired by VNS to be a part-time visiting nurse. In applying for employment, and shortly after being hired, McCullough signed a number of documents that explicitly stated her position was terminable at will, with or without cause. For example, McCullough signed two acknowledgments showing she received information regarding VNS's personnel policies. Both acknowledgments stated that VNS retained the right to termi-

nate the employment relationship "with or without cause and without notice at any time." Moreover, the acknowledgments went on to state that "[a]ny agreement contrary to the foregoing must be in writing and signed by the President of [VNS]."

[¶ 3] In June 1992, McCullough was issued a written warning by VNS for failing properly to flush a patient's intravenous (I.V.) line. In March 1994, McCullough was accused of failing to add supplements to a patient's I.V. solution. Although an incident report was completed by McCullough's supervisor, a written warning was not issued. The incident report was given to Magdalene Came, the VNS's director of home health care. Came decided McCullough should receive a formal warning. She discussed the issuance of a warning with McCullough's supervisor, who brought to Came's attention the fact that McCullough received a warning because of the June 1992 incident. Came determined that the combined incidents warranted termination, and she discussed this conclusion with Maryanna Arsenault, the executive director of VNS. Arsenault agreed with Came, and on May 6, 1994, McCullough was fired.

[¶ 4] VNS granted McCullough a review of her termination. After further investigation, VNS determined there were mitigating circumstances surrounding the June 1992 incident and that counseling, rather than termination, should have been its response to the second incident. VNS offered McCullough reinstatement with a back pay settlement, but she declined the offer. Instead, she brought a ten-count complaint against VNS alleging, *inter alia,* breach of an employment contract and defamation. The trial court granted VNS's motion for a summary judgment on all counts.

[¶ 5] On an appeal from a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was entered to determine whether the record supports the trial court's conclusion that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Simpson v. Central Maine Motors, Inc.,* 669 A.2d 1324, 1325–26 (Me.1996).

## I.

### *Breach of an Employment Contract*

[¶ 6] A contract of employment of indefinite duration is terminable at will by either party. *See Buchanan v. Martin Marietta Corp.,* 494 A.2d 677, 678 (Me.1985); *Terrio v. Millinocket Community Hosp.,* 379 A.2d 135, 137 (Me.1977). McCullough argues there is sufficient evidence to raise a genuine factual issue as to whether she had an employment contract for a definite term. We disagree. McCullough points to some references in VNS's employee handbook that she claims show its intent to create a definite term of employment. For example, the handbook refers to each employee's "tenure" with VNS; it provides for an initial performance evaluation after three months and annual performance appraisals thereafter; and it provides for special festivities to recognize employees who complete their fifth and tenth years of service. In addition, McCullough relies on a statement contained in the employee pension plan that benefits vest after five years should an employee "stop working for the Company before [his or her] Normal Retirement Date." Even when taken together, however, these statements are too vague to create a genuine issue whether VNS created a contract for a definite term.

[¶ 7] In the alternative, McCullough contends that even if her employment contract were of indefinite duration, there is sufficient evidence to raise a genuine issue whether VNS clearly intended to make the contract terminable only for cause. Although an employment contract of indefinite duration is terminable at will by either party, the parties may make the contract terminable "only pursuant to its express terms—as 'for cause'—by clearly stating their intention to do so." *Larrabee v. Penobscot Frozen Foods, Inc.,* 486 A.2d 97, 99–100 (Me.1984). We have interpreted this exception narrowly. *See, e.g., Libby v. Calais Regional Hosp.,* 554 A.2d 1181, 1183 (Me.1989) (directed verdict affirmed because written or oral language merely implying that discharge is for cause only is not sufficient to bind an employer); *Bard v. Bath Iron Works Corp.,* 590 A.2d

152, 155 (Me.1991) (summary judgment affirmed because pamphlet given by employer to employees did not contain a clear statement of intention that employees would be discharged only for cause).

[¶ 8] McCullough points primarily to two statements by VNS that she argues show it clearly intended to make her employment contract terminable only for cause. First, in a 1992 work environment survey VNS asked employees to respond to the statement "Employees know that disciplinary action will be fair." Second, in a "Management Guarantee to Staff," distributed to employees as part of its Total Quality Service program, VNS proclaimed that employees would be "treated with dignity and respect and encouraged to grow in an atmosphere of trust." We disagree with McCullough's contention that those two statements constitute a clear expression of VNS's intention to terminate her employment only for cause. They simply are too vague to provide the clear statement of intention required by *Bard* and *Libby.*

## II.

### *Defamation*

[¶ 9] McCullough alleges defamation based on three statements made by VNS to McCullough's co-workers and some VNS clients. First, on the day McCullough was fired her supervisor told other VNS nurses, whom she was trying to get to cover McCullough's shift, that McCullough was "unavailable" to perform her assigned visits. Second, a VNS nurse who was heading a teaching session shortly after McCullough's firing told other nurses in attendance that McCullough had been fired because of "several incidents." Third, after McCullough was fired VNS sent a letter to patients she served informing them that McCullough was "no longer employed by [VNS], and is no longer authorized to provide services to you on behalf of VNS."

[¶ 10] An essential element of a claim for defamation is the existence of a false and defamatory statement concerning the plaintiff. *Rippett v. Bemis,* 672 A.2d 82, 86 (Me.1996). We agree with the trial court

that none of the statements alleged by McCullough satisfy this element. The statement that McCullough was "unavailable" to perform her assigned visits is not defamatory, as it is simply too vague to convey a defamatory message. *See Bakal v. Weare,* 583 A.2d 1028, 1029 (Me.1990) (a statement is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.") The statement that she was terminated for "several incidents" when, in fact, she was only terminated for two incidents, is substantially true even though it may not be technically accurate. To a reasonable person, the statement that McCullough was discharged because of several incidents is no more damaging to her reputation than an accurate statement would have been, namely, that she had been discharged because of two incidents. *See also* RESTATEMENT (SECOND) OF TORTS § 581A cmt. f (1977) (It is not necessary to establish the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance.). The statement that McCullough had been terminated and no longer had authorization to provide services on behalf of VNS is true.

[¶ 11] McCullough also bases her defamation claim on statements made among members of VNS management concerning her disciplinary action. In particular, McCullough points to Magdalene Came's statements to Maryanna Arsenault that the June 1992 and March 1994 incidents raised concerns about patient safety and agency liability. We agree with the trial court that Came's statements were conditionally privileged. *See Rippett,* 672 A.2d at 87 (a conditional privilege may arise in any situation in which an important interest of the recipient of a defamatory statement will be advanced by frank communication). McCullough bears the burden of creating a factual issue that Came abused the conditional privilege by, among other actions, making the statements outside normal channels or with malicious intent. *Gautschi v. Maisel,* 565 A.2d 1009, 1011 (Me.1989.) McCullough is unable, how-

ever, to point to evidence that would permit her to meet this burden.

 [¶ 12] The third category of statements on which McCullough bases her defamation claim consists of two letters sent by VNS to the State Board of Nursing shortly after McCullough was discharged. The first letter briefly informed the board that McCullough had been fired for "non-compliance with professional practice standards relating to I.V. therapy." The second letter provided specific details about the two incidents leading to McCullough's termination.

[¶ 13] The Maine Health Security Act, 24 M.R.S.A. §§ 2501–2985 (1990 & Supp.1996), imposes the following reporting obligation on health care providers who have terminated the employment of a nurse:

> A health care provider shall, within 60 days, report in writing to the disciplined practitioner's board or authority the name of any licensed, certified or registered employee ... whose employment or privileges have been revoked, suspended, limited or terminated, together with pertinent information relating to the action.... The failure of any such health care provider to report as required is a civil violation for which a fine of not more than $1,000 may be adjudged.

*Id.* § 2506 (1990). Moreover, section 2511 (1990 & Supp.1996) provides immunity from civil liability for health care providers who "[make] any report or other information available to any board ... or professional review committee pursuant to law...."

[¶ 14] The foregoing statutory language provides VNS with immunity from civil liability for fulfilling its obligation to report McCullough's termination to the board. It is unnecessary for us to express an opinion whether the immunity provided by section 2511 is absolute or conditioned on the reporter acting without malice; even under the latter construction, McCullough has failed to produce evidence that VNS acted with malice in sending the letters.

[¶ 15] The remainder of McCullough's arguments do not merit discussion.

The entry is:

Judgment affirmed.