STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-11-269
TDW-CUM- 11/4/2011

CHARLES D. CLEMETSON,

Plaintiff

v.

ORDER

SWEETSER, INC.,

STATE OF MAINE
Cumberland, ss, Clerk's Office

Defendant.

NOV 04 2011

# RECEIVED

In this action plaintiff Charles Clemetson is suing defendant Sweetser Inc. alleging defamation, placement in a false public light, breach of fiduciary duty, and intentional and negligent infliction of emotional distress. The complaint seeks compensatory and punitive damages.

Before the court is a motion by Sweetser to dismiss the complaint on two grounds: (1) that Sweetser's alleged actions constituted protected activity under Maine's anti-SLAPP statute, 14 M.R.S. § 556; and (2) that in any event Dr. Clemetson's complaint fails to state a claim upon which relief may be granted.

The gist of Dr. Clemetson's complaint is that Dr. Clemetson, who is a licensed psychiatrist, was unfairly terminated from employment at Sweetser after approximately three weeks of work and that Sweetser subsequently filed a complaint with the Board of Licensure in Medicine falsely stating that Dr. Clemetson had failed to attend certain training and had repeatedly missed scheduled appointments with patients. Complaint ¶¶ 3-15. Dr. Clemetson also alleges that in seeking future employment, he was compelled to tell potential employers the unfounded and misleading reasons given by Sweetser for his termination. Complaint ¶ 23. Finally, he alleges in passing that

Sweetser employees made false and unprivileged statements to unspecified third parties. Complaint ¶¶ 16. 19.

### 1. Sweetser's anti-SLAPP and Immunity Defenses

Sweetser argues that its report to the Board of Licensure in Medicine was mandated under the Health Security Act, see 24 M.R.S. § 2506,[1] and falls within the anti-SLAPP statute's definition of a "written or oral statement . . . submitted to a legislative, executive or judicial body." 14 M.R.S. § 556. Sweetser notes that the Law Court has held that "the Legislature intended to define in very broad terms those statements that are covered by the statute." Schelling v. Lindell, 2008 ME 59 ¶ 12, 942 A.2d 1226, 1230. As a result, Sweetser argues, the anti-SLAPP statute requires Dr. Clemetson to show that Sweetser's report to the Board of Licensure was devoid of any reasonable factual support or any arguable basis in law and caused "actual injury" within the meaning of the anti-SLAPP statute to Dr. Clemetson. See 14 M.R.S. § 556; Morse Bros. Inc. v. Webster, 2001 ME 70 ¶ 20, 772 A.2d 842, 849 (discussing plaintiff's burden under anti-SLAPP statute); Schelling v. Lindell, 2008 ME 59 ¶¶ 17-19, 27, 942 A.2d at 1231-34 (discussing actual injury requirement)

Sweetser also argues that the Health Security Act provides that any health care provider or health care entity shall be "immune from civil liability . . . for making any report or other information available to any board, appropriate authority, professional competence committee or professional review committee pursuant to law." 24 M.R.S. §

---

[1] Section 2506 provides that a health care provider or entity "shall, within 60 days, report in writing to the disciplined practitioner's board or authority" the name of any licensed employee whose employment has been terminated for reasons related to clinical competence or unprofessional conduct, together with pertinent information relating to that action.

2

2511(1).[2] As a result, Sweetser argues that even if the anti-SLAPP statute were inapplicable, it cannot be held liable for its report to the Board of Licensure in Medicine.

2. Dr. Clemetson's Response

In response to Sweetser's motion, Dr. Clemetson has not contested Sweetser's arguments that the anti-SLAPP statute is applicable. Nor has he attempted to demonstrate through pleadings and affidavits that Sweetser's report to the Board of Licensure was devoid of any factual support or any arguable basis in law and that he suffered actual injury within the meaning of § 556. See Morse Bros. v. Webster, 2001 ME 70 ¶ 20, 772 A.2d at 849. Similarly, Dr. Clemetson does not argue that the immunity contained in § 2511 is inapplicable in his case or that his claims relating to Sweetser's report to the Board of Licensure are not subject to that immunity. See Plaintiff's Opposition to Defendant's Motion to Dismiss dated August 12, 2011 at 1-2.

Instead, Dr. Clemetson focuses on his allegation that in seeking employment after his termination from Sweetser, he was "compelled to explain to potential future employers and third parties the unfounded and misleading reasons given by Sweetser for his termination." Complaint ¶ 23. Because he is proceeding under a theory of "compelled self-publication," Dr. Clemetson argues, the Maine anti-SLAPP statute and the Health Security Act "do not apply." Plaintiff's Opposition to Defendant's Motion to

[2] The immunity set forth in § 2511 applies to "any person acting without malice, any physician, podiatrist, health care provider, health care entity or professional society, any member of a professional competence committee or professional review committee, any board or appropriate authority and any entity required to report under this chapter." The Law Court has reserved decision on whether the immunity conferred by § 2511 is absolute or conditioned on the absence of malice. McCullough v. Visiting Nurse Service, 1997 ME 55 ¶ 14, 691 A.2d 1201, 1205. However, because the words "acting without malice" appear only in connection with "any person," Magistrate Judge Kravchuk has opined that § 2511 is intended to provide absolute immunity to physicians, health care providers, and the other specifically identified professionals or entities. Landsberg v. Maine Coast Regional Health Facilities, 2009 U.S. Dist. LEXIS 37390, *27-28 (Recommended Decision), adopted in part, rejected in part on other grounds, 640 F. Supp. 2d 108 (D.Me. 2009).

3

Dismiss dated August 12, 2011 at 1. See id. at 2 (court should evaluate his allegation of compelled self-publication under the normal standard applicable to motions to dismiss, "not under the burden-shifting procedure set forth in the anti-SLAPP statute").

The court agrees that to the extent that Dr. Clemetson's allegations do not depend on reports that Sweetser has challenged under the anti-SLAPP statute and under the immunity contained in 24 M.R.S. § 2511, his claims must be evaluated under the usual standard applicable to a motion to dismiss. Under that standard, the material allegations of the complaint must be taken as admitted and must be read in the light most favorable to the plaintiff to determine if they sets forth elements of a cause of action or facts that would entitle plaintiff to relief. In re Wage Payment Litigation, 2000 ME 162 ¶ 3, 759 A.2d 217, 220.

Because Dr. Clemetson has waived any argument that his claims based on reports to the Board of Licensure in Medicine are barred by the anti-SLAPP statute and the immunity contained in § 2511, the court will grant Sweetser's motion as to those claims.


3. Compelled Self-Publication

The Law Court has expressly reserved the question of whether Maine law permits a defamation claim to be based on compelled self-publication. Cole v. Chandler, 2000 ME 104 ¶5, 752 A.2d 1189, 1193. Previously in 1995 the federal district court had predicted that Maine would recognize defamation claims based on compelled self-publication, but only where it was reasonably foreseeable that the plaintiff would be placed under strong compulsion to repeat the defamatory statement. See Carey v. Mt. Desert Island Hospital, 910 F.Supp. 7, 11-13 (D.Me. 1995) (Brody, J.).

4

Since Judge Brody's decision, various other courts have weighed in on the validity of compelled-self publication, and the court is aware that the theory of compelled self-publication now appears to be a minority view, that it has been described by the Seventh Circuit as a "largely discredited" doctrine, that Massachusetts and Connecticut have declined to adopt that doctrine, and that the federal court in New Hampshire has predicted that New Hampshire would not adopt such a theory. See Olivieri v. Rodriguez, 122 F.3d 406, 408 (7th Cir. 1997) (Posner, C.J.); White v. Blue Cross and Blue Shield of Massachusetts, 809 N.E.2d 1034, 1037-39 (Mass. 2004); Cweklinsky v. Mobil Chemical Co., 837 A.2d 759 (Conn. 2004); Slater v. Verizon Communications, 2005 U.S. Dist. LEXIS 3270, *26-28 (D.N.H. 2005)(McAuliffe, J.).

Whether this court or the Law Court will ultimately recognize compelled self-publication is, therefore, far from a foregone conclusion. Under the circumstances, however, the court will not make a final determination at the pleading stage. Additional factual development, either as part of a summary judgment record or at trial, will help to illuminate whether and to what extent compelled self-publication should provide a basis for liability. This is particularly true because Dr. Clemetson has also alleged, as noted above, that employees of Sweetser made unprivileged and defamatory statements to unspecified third parties. If true, this might provide a basis for liability apart from Dr. Clemetson's compelled self-publication theory and apart from any report made to the Board of Licensure in Medicine or any other appropriate authority.

The Law Court has held, however, that a defendant in a defamation case is entitled to sufficient notice of the content and circumstances of an allegedly defamatory statement to be able to determine whether defenses such as truth and privilege should be raised. See Picard v. Brennan, 307 A.2d 833, 834-35 (Me. 1973). In the court's view allegations that Sweetser employees made unspecified defamatory and unprivileged

5

statements to unspecified third parties are insufficient under this standard. Dr. Clemetson shall have 20 days from the date of this order to amend count I of his complaint in order to remedy these defects.

4. Dr. Clemetson's Other Causes of Action

Count II of Dr. Clemetson's complaint alleges that Sweetser's allegedly unfounded reasons for termination placed him in a false light. The essential elements of a false light claim are set forth in Restatement Second Torts § 652E (1977):

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability ...

(emphasis added). See Cole v. Chandler, 2000 ME 104 ¶17, 752 A.2d at 1197. Publicity requires communication to the public at large or to a sufficient number of persons so that it must be regarded as substantially certain to become a matter of public knowledge. Id.; Restatement (Second) of Torts § 652D, comment a.

Dr. Clemetson's complaint alleges that Sweetser's statements to third parties and to the Board of Licensure have given publicity to assertions that have placed Dr. Clemetson in a false light, Complaint ¶ 27, but the complaint does not allege that Sweetser made any communications to the public at large or to a sufficient number of persons that those communications are substantially certain to become a matter of public knowledge.[3] As a result, Sweetser's motion to dismiss Dr. Clemetson's false light claim will be granted.

---

[3] For the reasons noted above, Dr. Clemetson has not contested Sweetser's arguments that its report to the Board of Licensure were protected by the anti-SLAPP statute and were privileged under 24 M.R.S. § 2511, so his false light claims cannot be based on that report. In any event, a communication to the Board of Licensure is not a communication to the general public or a communication that is substantially certain to become a matter of public knowledge.

6

Count III of the complaint alleges that Sweetser breached a fiduciary duty to Dr. Clemetson but does not allege any of the essential elements of a fiduciary relationship – the actual placing of trust and confidence by the party claiming a fiduciary relationship and a great disparity of position and influence between the parties. See Bryan R. v. Watchtower Bible and Tract Society, 1999 ME 144 ¶ 19, 738 A.2d 839, 846. Moreover, even if Dr. Clemetson had recited those elements, the Law Court has ruled that in order to survive a motion to dismiss, "a plaintiff must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship." Id. ¶ 21, 738 A.2d at 846-47. Count III of Dr. Clemetson's complaint falls far short on this score, and Sweetser's motion to dismiss that count will be granted.

Count IV of Dr. Clemetson's complaint alleges intentional infliction of emotional distress. In part, this count of Dr. Clemetson's complaint consists of conclusory allegations that simply track the elements of intentional infliction of emotional distress as set forth in such cases as Curtis v. Porter, 2001 ME 158 ¶ 10, 784 A.2d 18, 22-23. See Complaint ¶¶ 38-40. The only facts supporting such a claim are those previously set forth – that Sweetser unfairly terminated Dr. Clemetson and made a false report to the Board of Licensure as to the reasons for Dr. Clemetson's termination, that Sweetser employees made unprivileged and defamatory statements about Dr. Clemetson to third parties, and that Sweetser's termination compelled Dr. Clemetson to repeat Sweetser's defamatory statements in seeking new employment and cast him in a false light.

Dr. Clemetson's claims based on Sweetser's report to the Board of Licensure are barred for the reasons stated above, and the court has some doubt that Dr. Clemetson's remaining allegations would, if proven, demonstrate that Sweetser's conduct was so extreme and outrageous as to exceed all possible bounds of decency and be regarded as

7

atrocious and intolerable in a civilized community. See Staples v. Bangor Hydro-Electric Co., 561 A.2d 499, 501 (Me. 1989). Nevertheless, that cannot be determined at the pleading stage.

Count V of the complaint consists of a claim for negligent infliction of emotional distress. In order to recover on a free-standing claim for negligent infliction of emotional distress, a plaintiff must demonstrate that a special relationship existed between plaintiff and defendant that created a duty to avoid the negligent infliction of emotional harm. Curtis v. Porter, 2001 ME 158 ¶¶ 18-19, 784 A.2d 18, 25-26. The only relationship between Dr. Clemetson and Sweetser that can be discerned from the complaint is an employer-employee relationship. However, there is no authority for the proposition that an employer-employee relationship constitutes the kind of special relationship that could give to a negligent infliction claim. Accordingly, count V of the complaint will be dismissed.

Count VI of the complaint seeks punitive damages. This is not a separate cause of action but a form of relief that may be available if Sweetser is held liable on one or more of Dr. Clemetson's other claims and if Dr. Clemetson also proves entitlement to punitive damages by clear and convincing evidence. In light of the rulings on Dr. Clemetson's other causes of action, his claim for punitive damages cannot be resolved on the pleadings.

The entry shall be:

With respect to Count I of the complaint, defendant's motion to dismiss is granted as to any defamation claims based on reports by defendant to the Board of Licensure in Medicine but is denied as to plaintiff's allegations of compelled self-publication. With respect to allegations in the complaint of unprivileged statements to third parties, plaintiff shall have 20 days from the date of this order to amend count I of the complaint as set forth in this order. If not such amendment is filed, plaintiff's claims relating to unspecified statements to third parties shall be dismissed. Defendant's

8

motion to dismiss is granted as to counts II, III and V of the complaint and is denied as to counts IV and VI of the complaint.

The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: November 4 , 2011

Thomas D. Warren
Justice, Superior Court

9

CHARLES CLEMETSON    VS SWEETSER
UTN:AOCSsr  -2011-0056023                    CASE #:PORSC-CV-2011-00269
---------------------------------------------------------------------

01 0000003404 ATTORNEY: MOSS, PHILIP
ADDR: D/B/A MOSS SHAPIRO 400 CONGRESS ST PORTLAND ME 04112
    F    SWEETSER INC                          DEF      RTND    07/15/2011

02 0000007244 ATTORNEY: UHL, ERIC J
ADDR: D/B/A MOSS SHAPIRO 400 CONGRESS ST PORTLAND ME 04112
    F    SWEETSER INC                          DEF      RTND    07/15/2011

03 0000009329 ATTORNEY: BANDA, DARRICK X
ADDR: 39 PORTLAND PIER PO BOX 4803 PORTLAND ME 04112
    F    CHARLES CLEMETSON                      PL       RTND    06/14/2011

STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
Cumberland, ss, Clerk's Office

FEB 15 2013

RECEIVED

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-11-269
*TDW-CUM-2/15/2013*

CHARLES D. CLEMETSON,

    Plaintiff

v.

                                          ORDER

SWEETSER, INC.,

    Defendant.

Before the court is a motion by defendant Sweetser Inc. for summary judgment.

In light of this court's prior orders dated November 4, 2011 and January 17, 2012, the remaining claims in this action are (1) a defamation claim based on the theory that plaintiff Charles Clemetson, a licensed psychiatrist who was terminated by Sweetser in June 2009, has been compelled to repeat certain allegedly unfounded and misleading reasons given by Sweetser for his termination and (2) a claim that Sweetser's conduct also constituted intentional infliction of emotional distress.

Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. E.g., Johnson v. McNeil, 2002 ME 99 ¶ 8, 800 A.2d 702, 704. The facts must be considered in the light most favorable to the non-moving party. Id. Thus, for purposes

of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME 99 ¶ 8, 694 A.2d 924, 926.

Defamation

The elements of a cause of action for defamation are (1) a false and defamatory statement concerning another person; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. See Rice v. Alley, 2002 ME 43 ¶ 19, 791 A.2d 932; Restatement (Second) of Torts § 558 (1977).

The allegedly defamatory statements made by Sweetser in this case were that Dr. Clemetson had missed appointments with patients with no call or explanation. This was the alleged behavior which caused Sweetser to terminate him and which formed the basis for Sweetser's subsequent report to the Board of Licensure in Medicine.[1]

Because Sweetser was required to make a report to the Board of Licensure pursuant to 24 M.R.S. § 2506, because such reports are subject to a statutory privilege pursuant to 24 M.R.S. § 2511(1), and because of the provisions of the anti-SLAPP statute, this court has previously dismissed Dr. Clemetson's defamation claims based on

---

[1] In that report Sweetser stated that Dr. Clemetson had received a verbal warning for missing the patient appointments, which Sweetser characterized as "unprofessional" behavior. The report to the Board of Licensure also stated that Dr. Clemetson had missed a training session, but any claims based on that report have been dismissed as discussed below. There is no evidence that Sweetser told Dr. Clemetson that his termination was based on anything other than missed appointments.

2

Sweetser's report to the Board of Licensure. See order dated November 4, 2011. It has also dismissed Dr. Clemetson's claim that Sweetser employees made unspecified defamatory and unprivileged statements to unspecified third parties. See order dated January 17, 2012.

The issues to be decided on the instant motion are whether there are disputed factual issues for trial on Dr. Clemetson's defamation claim and whether Dr. Clemetson can proceed to trial on his defamation claim when his only evidence of an unprivileged publication is based on the theory of "compelled self-publication" – that in seeking future employment, Dr. Clemetson was compelled to tell potential employers the allegedly unfounded and misleading reasons given by Sweetser for his termination.

On certain issues, the record demonstrates that there are disputed issues of fact for trial. Thus, while Sweetser contends that Dr. Clemetson missed appointments that were on his schedule, Dr. Clemetson has offered evidence that he was not aware of the appointments in question.

Sweetser also points out that Dr. Clemetson has continued to receive income from seeing private patients and has not offered any evidence other than speculation to substantiate his contention that he failed to obtain employment because of his termination from Sweetser. Thus, while Dr. Clemetson submitted an email exchange reflecting that he was turned down for a job at the Togus VA hospital, the emails in question state that he was turned down because of issues with his medical license that had occurred during the period from 2002 to 2004 – five years before his employment at Sweetser.[2] However, since the alleged defamatory statements relate to Dr. Clemetson's

---

[2] See documents identified as "Clemetson Employment Search 000005-000006" annexed to the October 17, 2012 affidavit of Dr. Clemetson. Specifically, the record reflects that Dr. Clemetson's license was suspended in May 2002 "due to unprofessional conduct and incompetence based on habitual substance abuse and diagnosis of a physical or mental condition that may result in the

3

fitness for his occupation as a psychiatrist, those statements would be actionable even absent any evidence of special harm in the form of lost employment income. See Restatement (Second) Torts § 573.

Similarly, assuming that the concept of compelled self-publication is legally sufficient, Sweetser argues that Dr. Clemetson has not shown that he in fact disclosed the reasons given by Sweetser for his termination to prospective employers. In this connection Sweetser relies on one set of employment applications on which, several months after he was terminated by Sweetser, Dr. Clemetson answered "No" when asked if he had been ever been "fired" or "discharged" from employment in the preceding five years.[3] However, another document in the record reflects that Dr. Clemetson did disclose to another prospective employer that he had been fired by Sweetser. Clemetson Deposition Ex. 11. In that document Dr. Clemetson further stated that he and the staff had been inaccurately informed about his schedule, that this led to a "misunderstanding," and that "the matter was subsequently clarified with the employer" – statements which Sweetser contends were inaccurate and, more importantly, not defamatory even under the compelled self-publication doctrine.[4]

---

licensee performing services in a manner that endangers the healthy or safety of patients." See id. and Defendant's Statement of Material Facts ("SMF") dated August 28, 2012 ¶5 (admitted). In September 2002 Dr. Clemetson agreed to change his license status to inactive. His license was reinstated subject to a Consent Agreement in 2004, and in November 2007 he was found to have complied with the Consent Agreement and was released from the conditions of that agreement. Id.

[3] See documents identified as Clemetson Employment Search 000040 and 000042 annexed to the October 17, 2012 Clemetson affidavit.

[4] In this connection the Law Court has stated that the mere statement that a person was "fired," even if false, is not necessarily slanderous per se because persons can be fired for lots of reasons that are unrelated to honesty, integrity, or occupational skill or fitness. Picard v. Brennan, 307 A.2d 83, 835 (Me. 1973). In this case, moreover, the statement that Sweetser had fired Dr. Clemetson, in and of itself, cannot be defamatory because that statement was true.

4

In making these arguments, however, Sweetser overlooks that Dr. Clemetson's affidavit squarely states that he was compelled to disclose the circumstances of his termination by Sweetser to more than a dozen prospective employers or employment agencies. October 17, 2013 Clemetson Affidavit ¶ 1. That is sufficient to create a disputed issue of fact for trial on the question of whether Dr. Clemetson was compelled to publish allegedly defamatory statements by Sweetser.

Negligence and Conditional Privilege

There are, however, two respects in which the court concludes that, construing the factual record in the light most favorable to Dr. Clemetson, he has nevertheless not demonstrated the existence of a genuine factual dispute for trial. These involve the interrelated subjects of whether Dr. Clemetson has offered evidence demonstrating the existence of a factual dispute as to whether Sweetser was at least negligent in making the statements that Dr. Clemetson alleges were defamatory and whether he has offered evidence demonstrating the existence of a factual dispute as to whether Sweetser is entitled to a conditional privilege.

As noted above, the tort of defamation requires fault amounting to at least negligence. E.g., Rice v. Alley, 2002 ME 43 ¶ 19. In this case Sweetser's Rule 56(h) statement of material facts asserts that Sweetser "justifiably believed" that Dr. Clemetson had been provided with advance copies of schedules showing the appointments that he subsequently missed. Sweetser's August 28, 2012 SMF ¶¶ 18, 24. In his opposing statement of material facts Dr. Clemetson questioned the relevance of

5

Sweetser's justifiable belief but admitted those assertions. Plaintiff's October 23, 2012 SMF ¶¶ 18, 24.[5]

Elsewhere in his opposing papers Dr. Clemetson refers to deposition testimony in which he asserted that Sweetser had fired him for a different reason – because it could not bill MaineCare for his services. See, e.g., Plaintiff's October 23, 2012 SMF ¶ 46. However, Dr. Clemetson has offered nothing but speculation to support the contention that a MaineCare billing problem motivated his termination, and Sweetser has offered unrebutted evidence that it was eventually paid by MaineCare for his services. See Sweetser SMF ¶ 39.

Given Dr. Clemetson's acknowledgment that Sweetser had a justifiable belief that he had missed patient appointments that were on his schedule without an excuse or explanation – the basis for his claim of defamation – the court cannot find that there is a genuine dispute of fact as to whether Sweetser's statements to that effect were at least negligent. Even assuming that Sweetser also had other reasons for terminating Dr. Clemetson, this is fatal to Dr. Clemetson's defamation claim. See Lester v. Powers, 596 A.2d 65, 71 (Me. 1991).

Moreover, the undisputed fact that the allegedly defamatory statements were the reasons given for Dr. Clemetson's termination establish that Sweetser is entitled to a conditional privilege under the circumstances in this case. See Cole v. Chandler, 2000 ME104 ¶ 6, 752 A.2d 1189 (employer entitled to conditional privilege on claim of

_____

[5] This is consistent with subsequent statements by Dr. Clemetson that Ms. Fagan of Sweetser may have thought he was apologizing for missing appointments and that, when he was terminated, Ms. Fagan had not realized that the calendars from which he was working did not show the appointments he had missed and that he had not spoken up at that time to explain his side of the story. See documents identified as Clemetson Employment Search 000063 and 000065 annexed to the October 17, 2012 Clemetson affidavit; Sweetser August 28, 2012 SMF ¶ 31; Plaintiff's October 23, 2012 SMF ¶ 31, relying on Exhibit D thereto; Exhibit D to Clemetson SMF at 000014, 000016.

6

defamation arising out of employee's termination). A conditional privilege would be applicable unless the originator of the defamatory statement abused the privilege. Id. ¶ 7. In this case Dr. Clemetson has not offered any evidence other than speculation to generate a disputed issue for trial as to whether Sweetser abused the privilege by making knowingly false statements, by recklessly disregarding the truth or falsity of its statements, or by acting out of ill will.[6]

Indeed, the concession that Sweetser "justifiably believed" that Dr. Clemetson had missed patient appointments that were on his schedule demonstrates that it is undisputed that Sweetser is entitled to a conditional privilege as to the statements that Dr. Clemetson contends were defamatory.

Compelled Self-Publication

In the alternative, Sweetser's motion for summary judgment should be granted because the court has reviewed the authorities cited by the parties and the factual record in this case and concludes that it is doubtful that the Law Court will adopt the theory of "compelled self-publication," at least under the circumstances of this case.

In its previous order the court noted that a federal decision by Judge Brody in 1995 predicted that Maine would recognize defamation claims based on compelled self-publication, that the Law Court had thereafter expressly declined to decide that issue, Cole v. Chandler, 2000 ME 104 ¶5, and that a number of recent court decisions in other states have since declined to recognize defamation claims based on compelled self-publication. See November 4, 2011 order at 4-5.

---

[6] Lester v. Powers demonstrates that even if Dr. Clemetson had offered evidence from which an inference could conceivably be drawn against the validity of a conditional privilege, this would be insufficient to defeat summary judgment in a defamation case. See 596 A.2d at 71-72 (inference that defendant's destruction of her notes prior to lawsuit demonstrated her knowledge of falsity was too speculative to defeat summary judgment).

7

While the ultimate decision on this issue must come from the Law Court, this court is persuaded by the reasoning of those courts that have, subsequent to Judge Brody's 1995 prediction, rejected the compelled self-publication theory. See Olivieri v. Rodriguez, 122 F.3d 406, 408 (7th Cir. 1997) (Posner, C.J.); White v. Blue Cross and Blue Shield of Massachusetts, 809 N.E.2d 1034, 1037-39 (Mass. 2004); Cweklinsky v. Mobil Chemical Co., 837 A.2d 759 (Conn. 2004); Slater v. Verizon Communications, 2005 U.S. Dist. LEXIS 3270, *26-28 (D.N.H. 2005) (McAuliffe, J.). The reasoning of those courts speaks for itself and will not be reiterated here.

A review of the summary judgment record in this case supports the conclusion that compelled self-publication is not consistent with Maine law. At least for the kind of jobs sought by Dr. Clemetson, there is evidence that certain employers do ask applicants if they have previously been fired or otherwise discharged from employment. As the record in this case demonstrates, however, Dr. Clemetson was not required to simply recite Sweetser's reasoning for his firing but was able to give his version of events, even to the point of misrepresenting the facts. See Clemetson Deposition Ex. 11 in which Dr. Clemetson stated that he had been inaccurately informed as to the scheduling of appointments and that this had led to a "misunderstanding" which was "subsequently clarified" with his employer.

In other instances where the same question was posed, there is evidence that Dr. Clemetson did not report that he had been fired. See documents identified as Clemetson Employment Search 000040 and 000042 annexed to the October 17, 2012 Clemetson affidavit. In still other instances Dr. Clemetson has stated that he fully disclosed the reasons given by Sweetser for his termination. E.g., Clemetson Deposition 128-29; October 17, 2012 Clemetson Affidavit ¶ 1. This underlies a problem with the compelled self-publication theory – it makes the existence of a defamatory publication subject to

8

the sole discretion of what the defamation plaintiff chooses to tell prospective employers.

Perhaps equally importantly, allowing a defamation action against an employer under a compelled self-publication theory would be inconsistent with the Law Court's long adherence to the rule that, where employment contracts are terminable at will, Maine does not recognize a common law action for wrongful discharge. See, e.g., Taliento v. Portland West Neighborhood Planning Council, 1997 ME 194 ¶ 9, 705 A.2d 696; Bard v. Bath Iron Works, 590 A.2d 152, 156 (Me. 1991); Larrabee v. Penobscot Frozen Foods, 486 A.2d 97, 100 (Me. 1984). As this case demonstrates, allowing Dr. Clemetson to sue Sweetser under a compelled self-publication theory would focus on whether he had unjustifiably missed patient appointments and would therefore allow him to pursue a backdoor cause of action for wrongful discharge. It is difficult to see why any other employee who wanted to bring a wrongful discharge claim could not similarly adopt a compelled self-publication rationale.

Intentional Infliction of Emotional Distress

The remaining question is whether Sweetser is entitled to summary judgment on Dr. Clemetson's claim of intentional infliction of emotional distress.

If the court is correct that Sweetser is entitled to summary judgment on the defamation claims based on conditional privilege, see pp. 6-7 above, that privilege would also apply to Dr. Clemetson's intentional infliction claim. See Rippett v. Bemis, 672 A.2d 82, 87 (Me. 1996), in which the Law Court stated that to allow recovery for intentional infliction of emotional distress based on statements that are privileged under defamation law would undermine the privilege.

9

In the alternative, and aside from whether conditional privilege exists, the court has considered the summary judgment record in the light most favorable to Dr. Clemetson and concludes that he has not generated a genuine dispute for trial as to whether Sweetser's conduct was sufficiently extreme and outrageous to allow recovery for intentional infliction of emotional distress. What is required is "conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, comment d. The issue of whether alleged conduct is sufficiently extreme or outrageous to meet the above standard is an issue for the court to determine in the first instance. Champagne v. Mid-Maine Medical Center, 1998 ME 87, ¶16, 711 A.2d 842, 847; Gray v. State of Maine, 624 A.2d 479, 484 (Me. 1993)

In this instance, Sweetser's alleged conduct, accepted as true for purposes of this motion, amounts to terminating Dr. Clemetson without cause and advancing baseless reasons for the termination.[7] This alleged conduct, if proven, would be both unfair and wrongful, but it is not extreme and outrageous, nor does it qualify as "atrocious and utterly intolerable in a civilized community." Persons are discharged from employment all the time. Some of those discharges are unjustified and in most if not all of the cases in which employees are unjustifiably discharged, the justifications advanced by the employer will be incorrect. Those instances, however, do not come close to meeting the

---

[7] Any contention that Sweetser knowingly advanced false reasons for Dr. Clemetson's discharge is belied by Dr. Clemetson's acknowledgment that Sweetser "justifiably believed" that he had missed patient appointments that were on his schedule. See discussion above at pp. 5-6.

If Sweetser had followed up an unjustified discharge with a report to the Board of Licensure of Medicine purely on its own initiative, the situation might be different. However, Sweetser was required to file a report to the Board and such a filing is privileged. See 24 M.R.S. §§ 2506, 2511(1).

10

"extreme and outrageous" standard required to proceed to trial on a claim for intentional infliction of emotional distress.

The Law Court has ruled that in appropriate cases summary judgment may be granted dismissing claims for intentional infliction of emotional distress if the court concludes that the alleged conduct is not sufficiently "extreme and outrageous" as a matter of law. See Barnes v. Zappia, 658 A.2d 1086, 1090 (Me. 1995); Gray v. State of Maine, 624 A.2d at 484 (neglect or refusal by caseworker to interview treating physician and caseworker's misrepresentation of the views of two consulting professionals not sufficiently extreme and outrageous); Staples v. Bangor Hydro-Electric Co., 561 A.2d 499, 501 (Me. 1989) (humiliation of plaintiff at staff meetings and demotion without cause not sufficiently extreme and outrageous).

Sweetser is therefore entitled to summary judgment dismissing Dr. Clemetson's intentional infliction of emotional distress claim.[8]

The entry shall be:

Defendant's motion for summary judgment is granted. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: February _15_, 2013

Thomas D. Warren
Justice, Superior Court

---

[8] Dr. Clemetson also has brought a claim for punitive damages against Sweetser, but punitive damages can only be awarded based on a finding that the defendant has engaged in tortious conduct. The dismissal of all of Dr. Clemetson's tort claims against Sweetser therefore eliminates his punitive damages claim as well.

11

---

01 0000001870          LILLEY, DANIEL
     39 PORTLAND PIER PO BOX 4803 PORTLAND ME 04112
     F    CHARLES CLEMETSON                    PL        RTND    08/15/2012

02 0000003404          MOSS, PHILIP
     D/B/A MOSS SHAPIRO 400 CONGRESS ST PORTLAND ME 04112
     F    SWEETSER INC                         DEF       RTND    07/15/2011

03 0000007244          UHL, ERIC J
     D/B/A MOSS SHAPIRO 400 CONGRESS ST PORTLAND ME 04112
     F    SWEETSER INC                         DEF       RTND    07/15/2011