STATE OF MAINE                          SUPERIOR COURT
ANDROSCOGGIN, ss                        CIVIL ACTION
                                        AUBSC-CV-13-144

RECEIVED & FILED

KEVIN F. STRONG,

            Plaintiff        ANDROSCOGGIN
                             SUPERIOR COURT
    v.                                  ORDER ON MOTION FOR
                                        SUMMARY JUDGMENT
REBECCA M. BRAKELEY

and

JONATHAN M. BAUSMAN,

            Defendants


Before the court is the defendants' motion for summary judgment. Plaintiff Kevin Strong's complaint alleges that defendants made false and defamatory statements in response to questionnaires circulated by a company working on behalf of Strong's potential employer. His complaint includes three counts: (1) defamation, (2) tortious interference with a business relationship, and (3) punitive damages. Defendants argue that they are absolutely immune from suit under the Maine Health Security Act, 24 M.R.S. § 2511. For the following reasons, defendants' motion is granted.

## BACKGROUND

Dr. Kevin Strong is a pediatric physician and previously worked at Central Maine Medical Center ("CMMC") with defendants Drs. Rebecca Brakeley and Jonathan Bausman, who are also pediatric physicians. (Pl.'s Add. S.M.F. ¶¶ 43-44.) In January 2013, CMMC exercised its option to terminate Dr. Strong's contract for business reasons. (Pl.'s Add. S.M.F. ¶ 47.) During Dr. Strong's subsequent job search, he used Dr. Brakeley as a reference, and she gave

Dr. Strong a positive letter of recommendation. (Pl.'s Add. S.M.F. ¶¶ 50-51.) In May 2013, Dr. Strong accepted a position with a private pediatric practice in Lewiston. (Pl.'s Add. S.M.F. ¶¶ 52-53.) Dr. Strong then began the application process for obtaining privileges at St. Mary's Regional Medical Center and CMMC. (Pl.'s Add. S.M.F. ¶ 53.)

Before Dr. Strong started working, he received a letter from an attorney at CMMC threatening legal action against him if he pursued private practice in Lewiston because of a non-compete clause in his former employment contract with CMMC. (Pl.'s Add. S.M.F. ¶ 55.) After receiving this letter, Dr. Strong was notified by St. Mary's that it had concerns about two references that were received through an independent contractor that St. Mary's uses to obtain information required to process applications for staff privileges. (Pl.'s Add. S.M.F. ¶ 56.) Synernet, the independent contractor, is a "credentials verification organization, which collects, verifies, and dispenses physician credentialing information" to its customers, which include hospitals. (Def.'s Supp. S.M.F. ¶ 4.) St. Mary's contracted with Synernet to collect credentialing information, and Synernet collected information on Dr. Strong when he applied for staff privileges at St. Mary's. (Def.'s Supp. S.M.F. ¶ 5.)

In July 2013, Synernet sent Drs. Brakeley and Bausman "Professional Reference Questionnaires" as part of its effort to collect credentialing information about Dr. Strong.[1] (Def.'s Supp. S.M.F. ¶ 9.) The questionnaires stated that they were sent "to request your assistance in providing information which will assist

---

1 Plaintiff notes that Drs. Brakeley and Bausman were not aware that the questionnaires would be used in connection with Dr. Strong's application for staffing privileges at St. Mary's. (Pl.'s Opp. S.M.F. ¶ 9.)

2

medical staff leaders involved in making credentialing and privileging recommendations . . . ." (Pl.'s Add. S.M.F. ¶ 20.) Drs. Brakeley and Bausman filled out the questionnaires and returned them to Synernet. (Def.'s Supp. S.M.F. ¶¶ 10-11.) Synernet then forwarded them to St. Mary's. (Def.'s Supp. S.M.F. ¶ 12.)

Dr. Strong obtained copies of the two references and was shocked to discover that they were from Drs. Brakeley and Bausman. (Pl.'s Add. S.M.F. ¶ 57.) The references included allegations that Dr. Strong had poor basic medical and clinical knowledge, had poor availability and thoroughness of patient care, had poor relationships with physicians and other professional staff, had poor communication with patients and families, and had been the subject of disciplinary action. (Pl.'s Add. S.M.F. ¶¶ 58, 60, 62-63.) Dr. Strong was eventually able to obtain privileges at St. Mary's but only after expending additional time, effort, and expense to correct the false statements provided in the questionnaires. (Pl.'s Add. S.M.F. ¶ 67.)

Dr. Strong filed his complaint on October 15, 2013, which he amended on October 31, 2013. Defendants filed a motion to dismiss, which the court denied on December 17, 2013. The court limited discovery to issues related to whether the defendants are entitled to absolute immunity for their responses to the reference questionnaires under 24 M.R.S. § 2511. On December 22, 2014, defendants moved for summary judgment. The sole issue before the court is whether 24 M.R.S. § 2511 provides immunity to Drs. Brakeley and Bausman for their responses to the Synernet questionnaires.

## DISCUSSION

1. Standard of Review

3

"Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Dussault v. RRE Coach Lantern Holdings, LLC*, 2014 ME 8, ¶ 12, 86 A.3d 52 (quoting *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *McIlroy v. Gibson's Apple Orchard*, 2012 ME 59, ¶ 7, 43 A.3d 948 (quoting *N. E. Ins. Co. v. Young*, 2011 ME 89, ¶ 17, 26 A.3d 794). "Even when one party's version of the facts appears more credible and persuasive to the court, any genuine factual dispute must be resolved through fact-finding, regardless of the nonmoving party's likelihood of success." *Lewis v. Concord Gen. Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732. If facts are undisputed but nevertheless capable of supporting conflicting, plausible inferences, "the choice between those inferences is not for the court on summary judgment." *Id.*

2. Immunity Under 24 M.R.S. § 2511

   a. Absolute vs. Conditional Privilege

Defendants argue that the basis for Dr. Strong's complaint, defendants' responses to the reference questionnaires are absolutely privileged, and they are therefore entitled to judgment as a matter of law. Under 24 M.R.S. § 2511:

> Any person acting without malice, any physician, podiatrist, health care provider, health care entity or professional society, any member of a professional competence committee or professional review committee, any board or appropriate authority and any entity required to report under this chapter are immune from civil liability . . . .

The Law Court has applied this section, but found it unnecessary "to express an opinion whether the immunity provided by section 2511 is absolute or

4

conditioned on the reporter acting without malice . . . ." *McCullough v. Visiting Nurse Serv. of S. Me., Inc.*, 1997 ME 55, ¶ 14, 691 A.2d 1201. The legislative history of the statute explicitly acknowledges that physicians can receive absolute or "blanket" immunity under the Act. The following explains the old law and how it was changed in 1988:

> Under existing law, immunity from civil and criminal liability is accorded in certain circumstances to any person, physician, health care provider, physicians' professional society, physicians' professional competence committee member or member of the medical or osteopathic board or related health care authority. The immunity applies if an individual or organization in the list above acts without malice in reporting information to an appropriate health care board or authority, in assisting in preparing information to be so reported, or in assisting the board or authority to carry out its duties with regard to the health care profession.
>
> Section 5 makes 3 substantive changes in the existing law.
> . . .
> Third, section 5 accords physicians and the listed health care organizations immunity for reporting to and assisting a pertinent health care board, authority or committee without regard to whether the actions were with malice. This blanket immunity is not accorded to other persons reporting to or assisting the health care boards, authorities or committees; the 'malice' standard remains for these persons.
> . . .
> [B]lanket civil immunity, as opposed to immunity applying a 'malice' standard, is accorded physicians and the listed health care organizations because they, as opposed to other persons, have certain duties to report imposed by the Maine Health Security Act.

L.D. 2520, Statement of Fact, § 5, at 11-12 (113th Leg. 1988). Thus, as physicians, Drs. Brakeley and Bausman could receive absolute immunity for the statements in the questionnaires.

b. "Pursuant to Law" Requirement

That defendants could receive blanket immunity under the Act does not end the analysis. The section granting immunity applies to the following situations:

5

1. **Reporting.** For making any report or other information available to any board, appropriate authority, professional competence committee or professional review committee *pursuant to law;*
2. **Assisting in preparation.** For assisting in the origination, investigation or preparation of the report or information described in subsection 1; or
3. **Assisting in duties.** For assisting the board, authority or committee in carrying out any of its duties or functions *provided by law.*

24 M.R.S. § 2511 (emphasis added). Dr. Strong argues that, because Drs. Brakeley and Bausman were not required to respond to the reference questionnaires, the reports were not made "pursuant to law" or as "provided by law" under these sections.

Under the Act, professional competence committee is defined as follows:

"Professional competence committee" means any of the following when engaging in professional competence review activity:
   A. A health care entity;
   B. An individual or group, such as a medical staff officer, department or committee, to which a health care entity delegates responsibility for professional competence review activity;
   C. Entities and persons, including contractors, consultants, attorneys and staff, who assist in performing professional competence review activities; or
   D. Joint committees of 2 or more health care entities

24 M.R.S. § 2502(4). Synernet meets the definition of a professional competence committee as an entity that "assist[s] in performing professional competence review activities."[2] As a licensed hospital, St. Mary's is obligated under the Act

2 The Act's definitions section further provides:
"Professional competence review activity" means study, evaluation, investigation, recommendation or action, by or on behalf of a health care entity and carried out by a professional competence committee, necessary to:
   A. Maintain or improve the quality of care rendered in, through or by the health care entity or by physicians;
   B. Reduce morbidity and mortality; or

6

to ensure that "provider privileges extended or subsequently renewed to any physician are in accordance with those recommended by the medical staff as being consistent with that physician's training, experience and professional competence." 24 M.R.S. § 2503(2). Synernet assists St. Mary's in fulfilling this obligation under the Act.

By responding to Synernet's reference questionnaires, Drs. Brakeley and Bausman were "assisting the . . . committee in carrying out . . . its duties or functions provided by law." 24 M.R.S. § 2511(3). St. Mary's is obligated to ensure that its professional staff is competent before extending staffing privileges to new physicians. The hospital uses Synernet to assist with this function, which makes Synernet a competence review committee under the Act. Drs. Brakeley and Bausman did not send unsolicited negative references to St. Mary's. Rather, they only responded to specific requests that were made pursuant to the hospital's statutory duties. Thus, they were assisting a competence review committee and the answers provided in the reference questionnaires are entitled to absolute immunity.

Dr. Strong argues that only "legitimate" responses to the questionnaires should receive immunity. He argues that, if a physician chooses to respond to a reference questionnaire, the physician must provide accurate information. He has produced evidence that Drs. Brakeley and Bausman provided false information on the form. Dr. Strong essentially argues that the court should apply the old "malice" standard that applied before the MHSA's immunity provision was amended. Under the absolute immunity provided under current

---

C. Establish and enforce appropriate standards of professional qualification, competence, conduct or performance.

24 M.R.S. § 2502(4-B).

7

law, the court does not need to look beyond whether the information was provided by a physician to assist a committee in carrying out a statutory duty. Having concluded that the immunity statute applies to the questionnaires, the court does not need to determine whether the information provided was accurate. *See Walter v. Jacobs*, ANDSC-CV-2004-157, at 4-5 (Me. Super. Ct., And. Cnty., Nov. 10, 2004) (concluding that statute provided immunity without looking to the content of the statements).

## CONCLUSION

Drs. Brakeley and Bausman are absolutely immune from civil liability for statements made in their answers to reference questionnaires. Accordingly, they are entitled to judgment as a matter of law.

The entry is:

> Defendants' motion for summary judgment is granted on all counts of plaintiff's complaint.

Date: 5/5/15

MaryGay Kennedy
Justice, Superior Court

8

KEVIN STRONG  - PLAINTIFF

Attorney for: KEVIN STRONG
PHILLIP E JOHNSON  - RETAINED
JOHNSON WEBBERT & YOUNG LLP
160 CAPITOL ST STE 3
PO BOX 79
AUGUSTA ME 04332-0079


vs
REBECCA BRAKELEY  - DEFENDANT

Attorney for: REBECCA BRAKELEY
AMY DIETERICH  - RETAINED 12/22/2014
SKELTON TAINTOR & ABBOTT
95 MAIN STREET
AUBURN ME 04210

Attorney for: REBECCA BRAKELEY
MICHAEL POULIN  - RETAINED 10/31/2013
SKELTON TAINTOR & ABBOTT
95 MAIN STREET
AUBURN ME 04210


JONATHAN BAUSMAN  - DEFENDANT

Attorney for: JONATHAN BAUSMAN
AMY DIETERICH  - RETAINED 12/22/2014
SKELTON TAINTOR & ABBOTT
95 MAIN STREET
AUBURN ME 04210

Attorney for: JONATHAN BAUSMAN
MICHAEL POULIN  - RETAINED 10/31/2013
SKELTON TAINTOR & ABBOTT
95 MAIN STREET
AUBURN ME 04210

SUPERIOR COURT
ANDROSCOGGIN, ss.
Docket No   AUBSC-CV-2013-00144


**DOCKET RECORD**

Filing Document: COMPLAINT                     Minor Case Type: LIBEL/DEFAMATION
Filing Date: 10/15/2013

## Docket Events:

10/15/2013 FILING DOCUMENT - COMPLAINT FILED ON 10/15/2013

10/15/2013 Party(s):  KEVIN STRONG
           ATTORNEY - RETAINED ENTERED ON 10/15/2013
           Plaintiff's Attorney: PHILLIP E JOHNSON

10/23/2013 Party(s):  JONATHAN BAUSMAN
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 10/17/2013
           JONATHAN BAUSMAN

10/23/2013 Party(s):  JONATHAN BAUSMAN
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 10/23/2013