STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
CIVIL ACTION
DOCKET NO.: BCDWB-CV-2019-3

DR. KATHLEEN PRUNIER,

   Plaintiff

v.

MARK GOOD, et. al.,

   Defendants

)
)
)
)
)
)
)
)
)
)
)

INTERIM ORDER REGARDING
TRIAL LOCATION

   Discovery in this case is complete, and the matter is now awaiting jury trial. In the meantime, Plaintiff Kathleen Prunier ("Dr. Prunier") has filed a Motion for a Change of Venue. Dr. Prunier seeks to change venue from Hancock County (Ellsworth) to either Penobscot County (Bangor) or Cumberland County (Portland). Publisher Defendants oppose the Motion and seek to keep the case in Hancock County.

   Technically, since this case is in the Business Court, what Dr. Prunier seeks is a not a change in venue pursuant to 14 M.R.S. § 508, but rather a change of trial location pursuant to M.R. Civ. P. 137(b). Under Section 508, a party moving for a change of venue must show presumed or actual prejudice. *State v. Johnson*, 479 A.2d 1284, 1287 (Me. 1984); *see also State v. Beckus,* 229 A.2d 316, 318 (Me. 1967) (describing grounds for a change of venue). Under Rule 137(b), a trial will be held "in the geographic area of the originating court," unless the parties agree on another location, or the Court determines there are

unusual circumstances that warrant conducting the trial at another location. M.R. Civ. P. 137(b). Unusual circumstances include scheduling considerations. *Id.* Thus, while the distinction between Section 508 and Rule 137(b) may superficially appear to be form over substance, the standards that apply to a change venue are substantively different than the standards that apply to a change of trial location.

In this case, under Rule 137(b) there are no unusual circumstances that warrant moving the trial to Cumberland County. The slight convenience that would be accorded Dr. Prunier's witnesses from Florida is outweighed by the substantial inconvenience that would be imposed on the Publisher Defendants and their witnesses, all of whom live and work in Hancock County or the surrounding geographic area. Further, even if hypothetically the Court were to determine it would be difficult for Dr. Prunier to obtain a fair trial in Hancock County (which the Court does not determine at this time, one way of the other), it would be unnecessary to relocate the trial all the way to Cumberland County. The Court therefore denies Dr. Prunier's Motion to the extent it seeks to move the jury trial location to Cumberland County (Portland).

It may or may not make sense under Rule 137(b) to move the trial location from Hancock County to Penobscot County, but the Court is not yet prepared to make that determination. The state and the nation are still in the grips of the pandemic. There is no guidance on when civil jury trials will resume in Maine, and when this particular case might get to select a jury. The wait could still be many months, and circumstances can change between now and then. Further, when civil jury trials do re-start, scheduling considerations and the availability of a jury pool may impact the analysis of whether to conduct the trial in Hancock County or Penobscot County.

Accordingly, the Court defers deciding the Motion at this time, at least as between Hancock County or Penobscot County. As the case gets closer to the point of scheduling a jury trial, Dr. Prunier can file a supplemental Motion if she still wishes to move the trial location from Hancock County to Penobscot County, adding any additional information that may be pertinent at that time. Publisher Defendants can oppose any such supplemental Motion as the rules provide.

The Clerk shall incorporate this Order on the docket by reference pursuant to M.R. Civ. P. 79(a).

SO ORDERED.


Dated: <u>February 4, 2021</u>              <u>          /s/                    </u>
                                              Judge, Business and Consumer Court

BCD-CV-2019-03

*DR. KATHLEEN T. PRUNIER*

     *Plaintiff*

*v.*

*MARK GOOD, et al.*

     *Defendants*


Party Name:                               Attorney Name:

*Dr. Kathleen T. Prunier*                **Pro-Se**

*Mark Good, Earl D. Brechlin,*        Bernard Kubetz, Esq.
*The Mount Desert Islander*          Christopher Uphouse, Esq.
                                 **Eaton Peabody**
                                 PO Box 1210
                               Bangor, ME 04402-1210

STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-CV-2019-03

DR. KATHLEEN T. PRUNIER,          )
                                  )
    Plaintiff,               )
                                  )
                                  )          ORDER GRANTING IN PART AND
                                  )          DENYING IN PART PUBLISHER
                                  )          DEFENDANTS' MOTION FOR
v.                                )          SUMMARY JUDGMENT
                                  )
                                  )
                                  )
                                  )
MARK GOOD, ET AL.,                )
                                  )
    Defendants.              )

## INTRODUCTION

Plaintiff Dr. Kathleen T. Prunier ("Prunier"), a veterinarian, filed a Complaint against multiple defendants alleging that she is entitled to recover damages for defamatory statements made in connection with an article captioned "Two charged in elder theft" in the *Mount Desert Islander*. Upon completing discovery, the remaining defendants—Mark Good, Earl Brechlin, and the *Mount Desert Islander* (collectively, "Publisher Defendants"), and Robert Byron ("Byron")— each moved for summary judgment pursuant to M.R. Civ. P. 56(b). The Court heard oral argument on Publisher Defendants' motion and on Byron's motion on June 23, 2020. This Order only addresses Publisher Defendants' motion.[1] Publisher Defendants are represented by Attorneys Bernard Kubetz and Christopher Uphouse of Eaton Peabody. Prunier is self-represented. For the

---

[1] By Order dated August 5, 2020, the Court granted Byron's motion, and entered summary judgment in his favor.

reasons discussed below, the Court grants in part and denies in part Publisher Defendants' Motion for Summary Judgment.

## FACTS

The undisputed material facts are as follows:

Kathleen Prunier, D.V.M., moved to 910 Oak Point Road, Trenton, Maine, in 1998 and that same year became friends with her neighbor, Richard Royal. Defendants Good, Brechlin, and *The Mount Desert Islander's* Statement of Material Facts ("Def. S.M.F.") ¶ 1. On July 12, 2014, Prunier and Royal executed a "Contract for Deed" (the "Contract"). Def. S.M.F. ¶ 2. Prunier drafted the Contract. Def. S.M.F. ¶ 6. Richard Royal was born on December 24, 1931, and was therefore 82 years old at the time he executed the Contract. Def. S.M.F. ¶ 8.

Under the terms of the Contract, Royal sold Prunier certain real property located in Trenton, Maine—identified as "Lot XB9 and Lot XB10"—for an agreed upon purchase price of $4,000 with no interest. Def. S.M.F. ¶ 3. The area of the land was 5.27 acres. Def. S.M.F. ¶ 32. Prunier was to pay the purchase price in monthly installments of $49.38 at an interest rate of "0% annually." Def. S.M.F ¶ 4. Prunier also agreed to pay all taxes on the property for the term of the Contract. Plaintiff's Opposition to Defendants *The MDI Islander*, Mark Good and Earl Brechlin's Statement of Material Facts (Pl. Opp. S.M.F.) ¶ 3. The Contract was recorded at the Hancock County Registry of Deeds on July 21, 2014. Def. S.M.F. ¶ 9.

On October 6, 2016, Prunier was indicted by a Grand Jury for one count of Theft By Deception, 17-A M.R.S.A. § 354 (Class B) (the "Indictment"). Def. S.M.F. ¶ 10. According to the Indictment, the Grand Jury charged that Prunier committed "theft by obtaining or exercising control over the property of Richard Royal, such property consisting of real estate with a value in excess of $10,000, with the intent to deprive Richard Royal thereof, and as a result of deception,

2

in that the Defendant did intentionally create or reinforce the impression that the assessed value of the real estate was less than $10,000, which impression was false and which Defendant did not believe to be true, all in violation of" Maine law. Def. S.M.F. ¶ 10.

On the same day of Prunier's indictment, the Grand Jury also indicted Lisa Harriman ("Harriman") for two counts: one count of Theft by Unauthorized Taking, 17-A M.R.S.A. § 353 (Class B), and one count of Misuse of Entrusted Property, 17-A M.R.S.A. § 903(1) & (4)(B) (Class B). Def. S.M.F. ¶ 11. With regard to Harriman, the Grand Jury charged that between November 19, 2012, to July 17, 2015, Harriman misused "entrusted property, in that she dealt with money of Richard Royal that had been entrusted to her as a fiduciary, in a manner which she knew to be a violation of her duty, which involved a substantial risk of loss to Richard Royal and which in fact resulted in a loss of Richard Royal's money with an aggregate value of more than $10,000. At the time of the offense, Richard Royal was a vulnerable person." Def. S.M.F. ¶ 11.

On October 19, 2016, *The Mount Desert Islander* newspaper published a news article headlined "Two charged in elder theft," which was written by reporter Mark Good and edited by Earl Brechlin. Def. S.M.F. ¶ 12. A complete copy of the article is appended to this Order. When the news article appeared, Plaintiff owned and operated a veterinary clinic called Your Pet's Next Best Friend. Def. S.M.F. ¶ 16. The article identifies Prunier by name, profession, and business location. Def. S.M.F. ¶¶ 12, 16. In reporting on the indictments of Plaintiff and Harriman, reporter Good reviewed the Contract recorded at the Hancock County Registry of Deeds and records maintained on the Town of Trenton's property tax database. Def. S.M.F. ¶¶ 13 & 14. The news article also attributes some statements to co-Defendant Robert Byron, the husband of Richard Royal's niece. Def. S.M.F. ¶ 15.

3

On March 9, 2017, the State dropped the Theft by Deception charge, and filed a Superseding Indictment of Prunier, charging her with one count of Theft by Unauthorized Taking or Tranfer, 17-A M.R.S.A. § 353 (Class B). Plaintiff's Additional Statement of Material Facts ("Pl. Add. S.M.F") ¶ 1. The Publisher Defendants did not report the State's abandonment of its original Theft by Deception Indictment against Prunier, or the State's issuance of a Superseding Indictment changing the charge against Prunier to Theft by Unauthorized Taking. Pl. Add. S.M.F. ¶¶ 1 & 2.

On August 2, 2017, a two-day criminal bench trial was held in the Hancock County Court, Judge Michael Roberts presiding. Def. S.M.F. ¶ 17. The Trial Court ultimately found that the State failed to prove Plaintiff's guilt beyond a reasonable doubt. Def. S.M.F. ¶ 21. In particular, the Trial Court noted the factual uncertainty surrounding the value of the property as a contributing factor in its decision. Def. S.M.F. ¶ 22.

## STANDARD OF REVIEW

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c); *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. A genuine issue of material fact exists when a fact-finder must choose between competing versions of the truth, even if one party's version appears more credible or persuasive. *Belanger v. York,* 2020 ME 24, ¶ 13, 226 A.3d 215 (quotation marks omitted). A fact is material if it has the potential to affect the outcome of the suit. *Levine,* 2001 ME 77, ¶ 4 n.3, 770 A.2d 653. To survive a defendant's motion for summary judgment, the plaintiff must establish a prima facie case for every element of the plaintiff's cause of action. *Oceanic Inn, Inc., v. Sloan's Cove*, LLC, 2016 ME 34, ¶ 26, 133 A.3d 1021. "When a plaintiff has the burden of proof on an issue, a court

4

may properly grant summary judgment in favor of the defendant if it is clear that the defendant would be entitled to a judgment as a matter of law if the plaintiff presented nothing more than was before the court" when the motion was decided. *Reliance Nat'l Indem. v. Knowles Indus. Servs., Corp.*, 2005 ME 29, ¶ 9, 868 A.2d 220.

## DISCUSSION

Under Maine law, a "communication is defamatory 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Bakal v. Weare*, 583 A.2d 1028, 1029 (Me. 1990) (*quoting* Restatement (Second) of Torts § 559 (1977)). In order to have a viable claim for common law defamation, a plaintiff must show the following:

(a) a false and defamatory statement concerning another;
(b) an unprivileged publication to a third party;
(c) fault amounting at least to negligence on the part of the publisher; and
(d) either actionability of the statement irrespective of special harm or the existence
of special harm caused by the publication.

Restatement (Second) of Torts § 558 (1977); *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991). In this case, Publisher Defendants "concede that their story was defamatory. The facts that were reported clearly were harmful to Plaintiff's reputation." Defs.' Reply to Pl.'s Opp'n to Mot. for Summ. J. 2. However, as Publisher Defendants note, their concession alone is insufficient for Prunier to survive summary judgement. *Id.* Prunier must also establish the remaining elements of her defamation claim, which consist of falsity, unprivileged publication, and fault.[2] *See Id.* In assessing whether a statement satisfies these elements, "the statement must be interpreted in its context, which includes the entire publication and all extrinsic circumstances known to the recipient." *Schoff v. York County*, 2000 ME 205, ¶ 9 n.3, 761 A.2d 869.

---

[2] Publisher Defendants' motion does not challenge whether Prunier can establish a genuine dispute regarding the existence of special harm, which is one way a plaintiff is able to satisfy the final element.

A claim for defamation is subject to many defenses. For example, truth is an absolute defense to a claim for defamation. *Lester,* 596 A.2d 69 n.5; *see also Ramirez v.* Rogers, 540 A.2d 475, 477 (Me. 1988). Substantial truth is also a defense. *McCullough v. Visiting Nurse Serv.*, 1997 ME 55, ¶ 10, 691 A.2d 1201. "It is not necessary to establish the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance." *Id.* (citing Restatement (Second) of Torts § 581A cmt. F (1977)). For example, the Law Court has held that a "statement that [an employee] was terminated for 'several incidents' when, in fact, she was only terminated for two incidents, is substantially true even though it may not be technically accurate." *Id.*

Opinion may also be a defense, since in order to have a successful defamation claim, the first element requires "an assertion of fact, either explicit or implied, and not merely an opinion, provided the opinion does not imply the existence of undisclosed defamatory facts." *Lester*, 596 A.2d at 69; *see* Restatement (Second) of Torts § 558(a) (1977). The question of whether an "allegedly defamatory statement is a statement of fact or opinion is a question of law." *Caron v. Bangor Publ'g Co.,*, 470 A.2d 782, 784 (Me. 1984). When determining whether a statement is a fact or an opinion, the court considers the "surrounding circumstances" and whether "the maker of the statement did not intend to state an objective fact but intended rather to make a personal observation on the facts." *Lester*, 596 A.2d at 71. Should "the court conclude[] that the average reader could not reasonably understand the statement as anything other than opinion, no genuine issue of material fact exists and summary judgment . . . may be entered" for the defendant. *Caron*, 470 A.2d at 784.

Similarly, hyperbole and similar rhetorical devices are not actionable as a matter of law. *Fortier v. Int'l Bhd. of Elec. Workers, Local 2327*, 605 A.2d 79 (Me. 1992) (citing *Caron*, 470 A.2d

at 784 to assert that statements not intended as statements of objective facts, but rather to present interpretation of facts, are not actionable); *see also Levesque v. Doocy*, 560 F.3d 82, 89 (D. Me. 2009) (noting that statements containing "imaginative expression" or "rhetorical hyperbole" are protected, non-defamatory speech).

Conditional privilege is also a defense. The unprivileged publication element of a defamation cause of action "requires a plaintiff to establish that the defendant's statement to a third person is not subject to a conditional privilege." *Waugh v. Genesis Healthcare LLC,* 2019 ME 179, ¶ 13, 222 A.3d 1063; *see also Rippett v. Bemis*, 672 A.2d 82, 86-7 (Me. 1996); Restatement (Second) of Torts § 558(b) (1977). A conditional privilege against liability for defamation "arises in settings where society has an interest in promoting free, but not absolutely unfettered, speech." *Lester*, 596 A.2d at 69. Whether a conditional privilege exists is a question of law to be decided by the judge. *Rice v. Alley*, 2002 ME 43, ¶ 21, 791 A.2d 932. The determination of whether such a privilege exists is based on the totality of the circumstances, looking at the "interests of the publisher and the recipient." *Id.* ¶ 22 (quoting *Lester*, 596 A.2d at 70). Once a defamation defendant asserts a conditional privilege, the burden of proving an abuse of that privilege shifts to the plaintiff. *Morgan v. Kooistra*, 2008 ME 26, ¶¶ 35-6, 941 A.2d 447. The plaintiff must then present evidence—beyond "bald accusations"—to support a finding that the privilege was abused, in order to send the issue of abuse of a conditional privilege to a fact-finder. *Id.* ¶ 36. The Law Court has noted that failing to require such a showing would render the privilege meaningless. *Id.*

The news media, in particular, enjoy a conditional privilege against defamation liability when reporting on public records in matters of legitimate public concern. *Cox Broad. Corp. v. Cohn,* 420 U.S. 469 (1975). Confirming the central role the news media plays in maintaining an informed electorate, the United States Supreme Court as held that the accurate publication of

7

information "obtained from public records . . . which themselves are open to public inspection" is protected by the First Amendment. *Id.* at 491. The Supreme Court explained further that the freedom of the press to publish information available through public records "appears to us to be of critical importance to our type of government in which the citizenry is the final judge of the proper conduct of public business." *Id* at 495.

Finally, a plaintiff in a defamation action must sometimes show fault rising to the level of actual malice, and so lack of actual malice can be a defense. For instance, a public official or public figure bringing a defamation claim against a defendant must prove that the defamatory statements were false and made with "actual malice"—which is to say the "statements were made with knowledge of their falsity or with reckless disregard as to whether they were true or false." *See Beal v. Bangor Publishing Co.*, 1998 ME 176, ¶ 6, 714 A.2d 805 (Me. 1998) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964). In defamation claims, actual malice occurs when the originator of the statement "knows his statement to be false, recklessly disregards its truth or falsity, or acts with spite or ill will." *See Rippett v. Bemis*, 672 A.2d at 87 (citing *Lester*, 596 A.2d at 69 & n.7 (Me.1991)); *see also Lester v. Powers*, 596 A.2d at 69 & n.7 ("actual malice" is a term of art which means "knowledge or disregard of falsity"). Actual malice must be proven by clear and convincing evidence. *Beal*, 1998 ME 176, ¶ 6, 714 A.2d 805.

Whether a person is a public figure, for all purposes or for a limited range of issues, is a question of law. *See* Restatement Second of Tort § 580A, cmt c (1977); *see also Haworth v. Feigon*, 623 A.2d 150, 158 (Me. 1993). Generally, designation as a public figure requires pervasive fame or notoriety, and designation as a limited public figure requires voluntary insertion into a public controversy. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351-52 (1974); *see also Ramirez*, 540 A.2d at 1085 (citing *Gertz*, 418 U.S. at 323). In determining whether an individual

8

is a limited public figure, it is the "court's first task to evaluate whether a public controversy existed prior to the defamatory publication." *Norris v. Bangor Publ'g Co.*, 53 F. Supp. 2d 495, 503 (D. Me. 1999). Individuals who are convicted of crimes, even if they attract public attention, do not necessarily become public figures. *Wolston v. Reader's Digest Ass'n*, *Inc.*, 443 U.S. 157, 167-68 (1979). "A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." *Id.* at 167; *see also Saunders v. VanPelt*, 497 A.2d 1121, 1123-24 n.2. (Me. 1985) (finding a psychologist-victim of slander did not become a public figure despite the malicious accusations against him becoming public knowledge).

Even if the plaintiff in a defamation action is neither a public official or a public figure, the First Amendment protects speech on matters of public concern. *New York Times Co.*, 376 U.S. at 270. "[A] private individual who seeks damages for a defamatory statement involving a matter of public concern cannot recover presumed or punitive damages absent a showing of actual malice." *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 128 (1st Cir. 1997) (citing *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 751, 756-57 (1985); *Gertz*, 418 U.S. at 349).

In assessing matters of public concern, speech "relating to any matter of political, social, or other concern to the community" is speech related to a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 146 (1983). The community does not need to be very large and the concern "need not be of paramount importance or national scope." *Levinsky's, Inc.*, 127 F.3d at 132. "Rather, 'it is sufficient that the speech concern matters in which even a relatively small segment of the general public might be interested.'" *Id.* (quoting *Roe v. City of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997)). Criminal prosecutions have long been understood to be matters of public

concern. *See United States v. Wood*, 299 U.S. 123, 149 (1936) (all citizens have an interest in the enforcement of the criminal laws).

## DISCUSSION

Prunier claims that numerous statements contained in the article are actionable. Publisher Defendants argue that the statements are truthful, substantially truthful, hyperbole, opinion, or conditionally privileged, and made without malice. Before examining each of the statements, the Court first addresses the question of whether Prunier must show actual malice, and if so, whether on the summary judgment record she has established a genuine dispute of fact as to malice.

### Actual Malice

The facts establish that at all relevant times in this case Prunier was a private citizen engaged in a veterinary practice. She did not hold public office of any kind. She did not enjoy pervasive fame or notoriety. She did not willingly or voluntarily insert herself into a public controversy. Public controversy did not exist prior to publication of the article. Accordingly, the Court determines that Prunier is not a public official, public figure, or limited public figure.

However, Prunier was indicted and prosecuted, and her criminal case ultimately went to trial. The fact of her indictment was a matter of public concern. Thus, without a showing of actual malice, Prunier cannot recover presumptive or punitive damages.

In this case, Prunier has not established any evidence of motive or intent on the part of Publisher Defendants. Prunier has not shown that Publisher Defendants knew the statements in the article were false, or acted recklessly with regard to the truth of the statements. As will be discussed later, Prunier has created a genuine dispute of fact regarding what property was sold and its value, and hence whether Publisher Defendants acted negligently. But it is undisputed that Good did at least some due diligence by reviewing the Contract and real estate records, and

10

interviewing at least one person. As a result, Prunier has failed to generate a genuine dispute concerning actual malice. It follows that Prunier is not entitled to seek presumptive or punitive damages at trial. Her remedy in this case, should she prevail at trial, consists of special (i.e. actual) damages.[3]

### Analysis of the Statements

In her Complaint, Prunier identifies the following three statements from the news article as defamatory:

"been indicted by a grand jury for allegedly bilking an elderly Trenton man with dementia";
"took advantage of the victim by befriending him and convincing him to sell her a 6-acre property"; and
"he was absolutely flat broke…It was just a sad situation."

Complaint ¶ 13. In her answers to interrogatories, Prunier identifies an additional series of statements or parts of statements from the article as defamatory.[4] The Court has reviewed all of the statements challenged by Prunier. As explained below, the Court concludes Prunier's action survives summary judgment with respect to two statements contained in the article. The Court will first address those two statements, and thereafter consider the remaining statements. The Court concludes the remaining statements are not actionable.

1. "<u>Two women have been indicted by a grand jury for allegedly bilking an elderly Trenton man with dementia out of what could be more than $200,000.</u>"

The statement quoted above is the first sentence of the article, situated immediately beneath the headline. The location of the sentence gives it prominence. Prunier claims this statement is

---

[3] Prunier asserts the defamatory statements contained in the article caused her catastrophic and irreparable actual harm, Pl. Add. S.M.F. ¶ 11, which Publisher Defendants dispute.

[4] Prunier also claims certain statements pertaining only to Harriman are defamatory to Prunier. None of the statements regarding only Harriman are defamatory to Prunier, and the Court does not further address those statements.

actionable for a number of reasons,[5] including that she was not indicted for committing theft by deception against an individual "with dementia." Indeed, Prunier's Indictment nowhere charges that she committed theft by deception against a person with dementia. The Indictment does not allege that Royal had dementia, nor does it mention dementia at all.[6] The article states as a matter of fact that the victim of Prunier's alleged crime had dementia, but does not explain where that fact comes from. Prunier argues that falsely reporting that she was charged with committing theft by deception against a person with dementia portrays her in significantly worse light than accurately reporting that she was charged with committing theft by deception against a person.

Publisher Defendants argue the language accurately paraphrases the Indictment, and is truthful.[7] As to dementia, Publisher Defendants assert that Royal had dementia in 2014 at the time he signed the Contract, and thus the statement is truthful. There are two problems with this argument. First, even if Royal had dementia at the time, that is not what Prunier was charged with. The statement in the article reports that Prunier was indicted for allegedly bilking a person with dementia. She was not so indicted.

Second, the summary judgment record does not establish beyond dispute that Royal had dementia during the relevant time period. Publisher Defendants rely on the transcript of testimony by Dr. Brian Caine, a physician who testified during Prunier's criminal proceeding, to establish as fact that Royal had dementia at the time he signed the Contract. Def. S.M.F. ¶¶ 18-20. The record

---

[5] Since the Court finds the statement defamatory in at least one respect, the Court need not address the other grounds Prunier argues make the statement actionable. Since a defamatory statement must be considered in its context, *Schoff*, 2000 ME 205, ¶ 9 n.3, the entire statement will be presented to the fact finder. Prunier can then put on evidence and make her arguments that the statement is defamatory in several respects.

[6] There is also no mention of dementia in Harriman's indictment. Harriman's indictment does allege that Royal was a "vulnerable person," but Prunier's indictment does not so allege.

[7] Given the Court's focus on the dementia issue, it is unnecessary for the Court to address the various other ways in which Publisher Defendants argue the statement is truthful. The entire statement, in context, will be presented to the fact finder, and Publisher Defendants can defend the statement on all pertinent grounds.

citation, however, does not support the statement of fact. *See* M.R.Civ. P. 56(h)(4). According to the transcript testimony, Dr. Caine examined Royal in July 2015, and concluded Royal had "mild cognitive impairment, early dementia." However, Royal signed the Contract in July 2014, a full year earlier. Dr. Caine concedes he did not examine Royal in July 2014, and that he "would assume" the diagnosis applied at both points in time. Dr. Caine's assumption falls far short of establishing as a matter of undisputed fact that Royal had dementia in July 2014. Indeed, Prunier disputes that Dr. Caine's testimony establishes that Royal had dementia in July 2014. Def. S.M.F. ¶ 31; Pl. Opp. to Def. S.M.F. ¶ 19.[8]

Publisher Defendants thus fail to establish the truthfulness of the statement. Based on the summary judgment record, there is a genuine dispute of fact regarding the truthfulness of whether Royal had dementia during the relevant time period; and whether Prunier was indicted for theft by deception against a person with dementia. Since the indictment does not mention dementia, and Dr. Caine's testimony regarding Royal's mental status in 2014 is superficial at best, there is also a genuine dispute about whether Publisher Defendants negligently reported Prunier as having committed theft by deception against a person with dementia. The controversy is directly material to her claim. Committing theft by deception against a person is one thing, committing theft by deception against a person with dementia is quite another thing, and worthy of significantly greater moral opprobrium. *See* Restatement (Second) of Torts § 614; *see also Chapman v. Gannett*, 132 Me. 389, 391, 171 A. 397, 398 (1934); *Bradburg v. Segal*, 121 Me. 146, 148, 116 A. 65, 66 (1922). Therefore, the statement survives summary judgment and will go to the fact-finder at trial.

---

[8] Prunier's opposing statement of material fact lacks a ¶ 20, although it appears Pl. Opp. S.M.F. ¶ 19 opposes both ¶¶ 19 and 20 of Def. S.M.F. Even if the Court were to find that technically Prunier did not properly oppose Def. S.M.F. ¶ 20, the result would be no different. Def. S.M.F. ¶ 20 is unsupported by the record citation, and may therefore be disregarded. *See* M.R.Civ. P. 56(h)(4).

Finally, the Court must determine whether the statement is conditionally privileged. Publisher Defendants' statements of material fact do not establish where Good obtained the information that Royal had dementia, but the information clearly did not come from the indictment. As a summary or paraphrasing of the indictment, there is a genuine dispute of fact about whether the statement regarding dementia is accurate. The statement about dementia is not only outside the public document, the statement injects into the story a defamatory element that is far more negative than the Indictment itself. Considering the interests of Publisher Defendants and readers of the article, Prunier has established a genuine dispute regarding whether the conditional privilege was abused. Accordingly, Publisher Defendants are not entitled to summary judgment on the conditional privilege defense, and the issue of conditional privilege will also go to the fact-finder.

2. "Prunier, Byron said, took advantage of the victim by befriending him and convincing him to sell her a 6-acre property with a right-of-way to the shore, valued by the town at $77,000, for much less."

Prunier claims this statement is actionable for a number of reasons, including that she purchased 5.27 acres valued by the town at around $7,900. Publisher Defendants argue the statement is truthful or at least substantially truthful.[9]

It is undisputed that Prunier contracted with Royal to purchase 5.27 acres of land identified as "Lot XB9 and Lot XB10" in Trenton, Maine. In support of their argument that the article nevertheless accurately reported six acres of property valued by the town at $77,000, Publisher Defendants rely on Def. S.M.F. ¶ 5. However, that statement of material fact applies to a property identified by the Town as Lot 74. Publisher Defendants fail to establish that Lot 74 is the same as

---

[9] Since the Court finds the statement actionable in at least one respect, the Court need not address the parties' other arguments regarding truth or falsity. The statement will go to the fact finder, in context, and the parties can put on evidence and make all their arguments for truth or falsity.

Lot XB9 and XB10, or what the connection, if any, exists between them. Good's reporting of Lot 74 was also plainly erroneous. Lot 74 consists of 6.26 acres of land (valued at $74,700), while Lot XB9 and Lot XB10 consist of 5.27 acres. Given that Lot 74 is 0.99 acres larger than Lot XB9 and Lot XB10, it is clear they are not the same property. Thus, to the extent Def. S.M.F. ¶ 5 is offered to support the statement that the town valued Lot XB9 and Lot XB10 at $77,000, the record citation does not support the statement of fact. *See* M.R.Civ. P. 56(h)(4). The record citation also fails to support the statement with respect to Lot 74.

According to Prunier, the basic problem with the news article is that Publisher Defendants reported on the wrong land. This assertion goes to the very heart of the case. Prunier maintains that she purchased just over five acres of mostly wet, swampy land situated inland and to the west of about one acre of dry, valuable shore front property retained by Royal. Pl.'s Opp. S.M.F. ¶¶ 5, 32, 33, 34; Pl.'s A.S.M.F. ¶¶ 3, 4.[10] Prunier asserts that the property she purchased, even with a walking right-of-way to the shore, is worth very little money. *Id.* Prunier maintains that town records accurately reflect what she contracted to purchase, and the land she purchased was worth about $7,900. *Id*; Def. S.M.F. ¶¶ 32-34. Indeed, even the Court in the criminal proceeding noted the factual uncertainty surrounding the value of the property as a factor in Prunier's acquittal. The dispute is certainly material, because being charged for allegedly bilking someone out of real estate worth $77,000 is far more blameworthy than bilking someone out of real estate worth $7,900.

---

[10] Publisher Defendants object to the following exhibits attached to Prunier's affidavit, and thus used to support Prunier's opposing and additional statements of material fact: Exhibits 1, 2, 3, 5, 6, 15, 23, 24a, and 37. Each of these exhibits contain handwritten annotations of unknown provenance which are hearsay, and thus the handwritten annotations are excluded. The underlying documents are admitted. Publisher Defendants also object to the following exhibits attached to Prunier's affidavit: Exhibits 5, 7, 9 and 10. However, Prunier submitted an affidavit from Carol Walsh, the Manager of Trenton, attesting to the authenticity and accuracy of the copies. The documents are thus admitted. Even if the Court had excluded all the exhibits in their entirety, the result would be no different. Since Publisher Defendants' record citation does not support their statement of material fact, Publisher Defendants have not established the truthfulness of the statement that Prunier purchased six acres of land valued at $77,000.

15

As a result, Publisher Defendants have failed to establish the truthfulness of their statement reporting the amount and value of land Prunier purchased. Prunier has also established a genuine dispute of fact regarding falsely reporting the property she purchased and its value. Further, it is undisputed that in writing the article, Good reviewed the Contract and tax records. The tax records Good reviewed don't reference Lot XB9 or XB10, and reflect a different acreage. This also raises a genuine dispute of fact regarding negligence, and whether Good should and could have ascertained the difference between the property Prunier purchased and the property about which Good reported. Finally, since there is a genuine dispute about whether Good accurately described the public records with regard to Lot XB9 and Lot XB10, and hence whether Publisher Defendants abused their conditional privilege, Publisher Defendants are not entitled to summary judgment on their conditional privilege defense. Both the statement and the issue of conditional privilege will go to the fact-finder to be decided at trial.

3. "Two charged in elder theft."

Prunier considers this statement defamatory because she was not indicted for the crime of elder theft. However, the headline must be read in conjunction with the article as a whole. The article reports that two individuals were charged with crimes. The body of the article clearly reports that Prunier was indicted for one count of theft by deception. The article also clearly reports the crimes with which Harriman was charged. The phraseology of the headline is therefore merely a rhetorical device, and is not actionable.

4. "Prunier is accused of committing theft by taking control of the victim's property as a 'result of deception,' by creating the impression that the real estate she purchased from the victim was valued at a considerably lower amount than its assessment for tax purposes."

16

This statement is a truthful paraphrasing of the indictment. Prunier's objection to the use of the word "victim" borders on the frivolous. The statement is not actionable.

5. "According to a contract between Prunier and the victim effective July 14, 2014, and filed with the registry of deeds, Prunier purchased the property for $4000, which was to be paid in monthly installments of $49.38 and with no interest."

This statement is accurate and truthful. The fact the article did not also report that Prunier agreed to pay taxes on the property during the term of the contract does not make the statement false. Moreover, the omission of the tax information is immaterial. Whether Prunier agreed to pay property taxes cannot reasonably add to the public obloquy associated with reportedly bilking an individual out of real estate with $77,000. *See Hudson v. Guy Gannett Broad Co.*, 521 A.2d 714, 717 (Me. 1987) ("a court should view the language as it would be understood by an ordinary, intelligent recipient").

6. "Although the indictments state that the thefts in both cases exceed $10,000, Bryon estimates the total loss at more than $200,000."

The statement quoted above pertains to the combined loss allegedly caused by Prunier and Harriman. The article does not allocate the amount of loss between Prunier and Harriman. In order to establish the falsity of the statement (or at least generate a dispute of fact), Prunier needs to address the total estimated loss, and Harriman's contribution thereto. Prunier's attempt to establish the falsity of the statement (or at least generate a dispute of fact) by focusing on only the value of the real estate she purchased is unsuccessful, because she fails to address the magnitude of the losses alleged to have also been caused by Harriman. As a result, the statement is not actionable.

7. "He was absolutely flat broke," Byron said. "It was just a sad situation."

17

As the Court noted in its Order granting Byron's Motion for Summary Judgment, the first section of the statement—"'He was absolutely flat broke"— clearly refers to Robert Royal and not Prunier. Therefore, Prunier is unable to meet the first element of a successful defamation cause of action which requires a false and defamatory statement concerning her.

As to the second part of the statement—"It was just a sad situation"—the first element of a defamation claim requires a "false" statement which must be "an assertion of fact, either explicit or implied, and not merely an opinion." *Lester*, 596 A.2d at 69; *see* Restatement (Second) of Torts § 558(a) (1977). The question of whether an "allegedly defamatory statement is a statement of fact or opinion is a question of law." *Caron*, 470 A.2d at 784. When determining whether a statement is a fact or an opinion, the court considers the "surrounding circumstances" and whether "the maker of the statement did not intend to state an objective fact but intended rather to make a personal observation of the facts." *Lester*, 596 A.2d at 71. Should "the court conclude[] that the average reader could not reasonably understand the statement as anything other than an opinion, no genuine issue of material fact exists and summary judgment . . . may be entered" for the defendant. *Caron*, 470 A.2d at 784.

Looking at the nature of the statement, the context in which it was given, and the familial connection of the other indicted individual, the Court concludes this statement is an opinion. Under the circumstances, stating that something is a "sad situation" cannot reasonably be construed by the average reader as an objective fact. There is nothing in the summary judgment record to indicate that Good, in reliance on Byron, was specifically referring to Prunier or implying objective, negative facts about her. Accordingly, the statement is not actionable.

8. Kathleen Prunier, 58, of Trenton, a Veterinarian who operates the Your Pet's Next Best Friend veterinary clinic in Bar Harbor…."

This statement is factually accurate and does not portray Prunier in a negative light. It is therefore not defamatory and not actionable, in and of itself. Certainly, Prunier can argue that including the information in the article contributed to her alleged special damages. Nevertheless, on its own, the statement does not provide Prunier with a cause of action.

## CONCLUSION

For all the foregoing reasons, the Court grants Publisher Defendants' motion in part, and denies the motion in part. The motion is granted on the issue of presumptive and punitive damages, and to the extent several statements contained in the article have been determined nonactionable. However, the motion is denied in that the case now moves forward toward trial on the two actionable statements discussed above, along with the question of conditional privilege. At trial, the entire article will be present to the fact-finder, and the two actionable statements will be considered in the context of the complete article and all the statements therein.

The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

So Ordered.


Dated:   September 10, 2020                      _____/s_____
                                                 Michael A. Duddy
                                                 Judge, Business and Consumer Court

19

*DR. KATHLEEN T. PRUNIER*

  *Plaintiff*

*v.*

*MARK GOOD, et al.*

  *Defendants*

Party Name:                                        Attorney Name:

*Dr. Kathleen T. Prunier*                          **Pro-Se**

*Mark Good, Earl D. Brechlin,*                     Bernard Kubetz, Esq.
*The Mount Desert Islander*                        Christopher Uphouse, Esq.
                                                        **Eaton Peabody**
                                                        PO Box 1210
                                                        Bangor, ME 04402-1210

*Bob Byron*                                        Frederick Costlow, Esq.
                                                        **Richardson, Whitman, Large & Badger**
                                                        PO Box 2429
                                                        Bangor, ME 04402-2429

DR. KATHLEEN T. PRUNIER,        )
                                     )
       Plaintiff,             )
v.                             )     ORDER GRANTING DEFENDANT
                                     )     ROBERT BYRON'S MOTION FOR
MARK GOOD, et al.,          )     SUMMARY JUDGMENT
                                   )
       Defendants.          )

## INTRODUCTION

Plaintiff Dr. Kathleen T. Prunier ("Prunier"), a veterinarian, filed a Complaint against multiple defendants alleging that she is entitled to recover damages for defamatory statements made in connection with an article captioned "Two charged in elder theft" in the *Mount Desert Islander*. Upon completing discovery, the remaining defendants—Mark Good, Earl Brechlin, and the *Mount Desert Islander* (collectively, the "Publisher Defendants"), and Robert Byron ("Byron")—each moved for summary judgment pursuant to M.R. Civ. P. 56(b). The Court heard oral argument on the Publisher Defendants' motion and on Byron's motion on June 23, 2020. This order only addresses Byron's motion. For the reasons discussed below, the Court grants Byron's motion.

## FACTS

The undisputed material facts are as follows: On October 6, 2016, Prunier was indicted by a Grand Jury for one count of Theft By Deception, 17-A M.R.S.A. § 354 (Class B). (Affidavit of

1

Dr. Kathleen T. Prunier ("Prunier Aff.") ¶ 42, Exhibit 15, referenced in Plaintiff's Opposition Statement of Material Facts ("O.S.M.F.") ¶ 15.)[1]  According to the Indictment, the Grand Jury charged that Prunier committed "theft by obtaining or exercising control over the property of Richard Royal, such property consisting of real estate with a value in excess of $10,000, with the intent to deprive Richard Royal thereof, and as a result of deception, in that the Defendant did intentionally create or reinforce the impression that the assessed value of the real estate was less than $10,000, which impression was false and which Defendant did not believe to be true, all in violation of" Maine law.[2]  (Prunier Aff. ¶ 42, Exhibit 15.)

On the same day of Prunier's indictment, the Grand Jury also indicted Lisa Harriman ("Harriman") for one count of Theft by Unauthorized Taking, 17-A M.R.S.A. § 353 (Class B), and one count of Misuse of Entrusted Property, 17-A M.R.S.A. § 903(1) & (4)(B) (Class B).  With regard to Harriman, the Grand Jury charged that between November 19, 2012, to July 17, 2015, Harriman misused "entrusted property, in that she dealt with money of Richard Royal that had been entrusted to her as a fiduciary, in a manner which she knew to be a violation of her duty, which involved a substantial risk of loss to Richard Royal and which in fact resulted in a loss of Richard Royal's money with an aggregate value of more than $10,000.  At the time of the offense, Richard Royal was a vulnerable person."  (Prunier Aff. ¶ 54, Exhibit 21.)

On October 18, 2016, Mark Good of the *Mount Desert Islander* interviewed Byron, a relative of Royal, for a story regarding Prunier and Harriman.  (Affidavit of Defendant Robert

---

[1] The copy of the Indictment provided by Prunier is missing the second page, which contains the date.  The Court takes judicial notice that the Indictment is dated October 6, 2016. Further, although the Indictments of Prunier and Harriman are central to this case, and have been referred to by the parties throughout the life of this case, neither party includes a convenient S.M.F. referring to the content of the Indictments which is undisputed. Accordingly, the Court cites to the attachments to Prunier's affidavit.

[2] On March 9, 2017, the State filed a Superseding Indictment of Prunier, charging her with one count of Theft by Unauthorized Taking, 17-A M.R.S.A. § 354 (Class B).  (Prunier Aff. ¶ 51, Exhibit 18, referenced in O.S.M.F. ¶ 15.)  As confirmed at oral argument, Prunier was ultimately found not guilty of the charge.

Byron ("Byron Aff.") ¶ 4).3 Prunier was not present during the interview,4 and has no independent knowledge of the exact wording Byron used when talking to Good.5 (Defendant Robert Byron's Statement of Material Facts ("Byron's S.M.F.") ¶ 2.) Byron told Good that Prunier and Royal were friends, but Byron did not use the word "befriended." (Byron's S.M.F. ¶¶ 7, 32.)6 Byron did not refer to Royal as a "victim." (Byron's S.M.F. ¶ 24.) Byron did not tell Good that Prunier "[t]ook advantage of the (victim) by befriending him and convincing him to sell her a 6-acre property with a right-of-way to the shore, valued by the town at $77,000." (Byron's S.M.F. ¶ 31.) The amount of loss Byron attributed to the Harriman matter as unclear. (Byron's S.M.F. ¶ 29.) Byron's statement about Royal being flat broke was referencing a time in the Harriman matter. (Byron's S.M.F. ¶ 26.) Byron's reference to a sad situation applied to the situation in total and not to any individual or anything specific. (Byron's S.M.F. ¶ 28.)

On October 19, 2016, the day after Good interviewed Byron, an article written by Good headlined "Two charged in elder theft" was published in the *Mount Desert Islander*. (Byron's

3 The interview is a central element of this case, and has been referred to by the parties throughout the life of the case. Both parties discuss the interview in their briefs, and the date and fact of the interview are undisputed. However, neither party includes a convenient S.M.F. referring to the interview, and so the Court cites to Byron's affidavit.

4 Verified during oral argument.

5 In her O.S.M.F., Prunier attempts to qualify or dispute the paragraphs of Byron's S.M.F. setting forth what Byron said or didn't say to Good. Prunier relies primarily on paragraphs 56, 78, and 81 of her affidavit and the exhibits attached thereto. Paragraph 56 of her affidavit refers to the newspaper article itself, the contents of which as to Byron are inadmissible hearsay. Paragraph 78 of her affidavit refers to Byron's answers to Prunier's second set of interrogatories, none of which provide the basis to qualify or dispute Byron's S.M.F. Paragraph 81 of Prunier's affidavit refers to Good's answers to Prunier's interrogatories, none of which provide the basis to qualify or dispute Byron's S.M.F. Prunier was not present at the interview, did not depose Byron or Good, and has not identified anyone who overheard the interview. Accordingly, Prunier's attempts to qualify or dispute the paragraphs of Byron's S.M.F. setting forth what Byron said or didn't say to Good are unsuccessful.

6 Prunier objects to several of the paragraphs contained in Byron's S.M.F. referred to in this Order. Prunier argues that although Byron supports the paragraphs by referring to his affidavit, he refers to his affidavit as a whole and not to specific paragraphs in his affidavit. The Court overrules the objections. As Byron notes in his Reply Brief, Byron's affidavit is short and the information contained therein is easily ascertainable. Further, as Exhibit D to his Reply Brief, Byron provides a Cross Reference to the specific supporting paragraphs in his affidavit. Byron therefore satisfies the requirement for citation to specific paragraphs.

S.M.F. ¶ 1, Prunier Aff. ¶ 56, Exhibit 23.) Byron did not write, read, or approve the article prior to publication. (Byron's S.M.F. ¶ 23.)

## STANDARD OF REVIEW

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c); *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. A genuine issue of material fact exists when a fact-finder must choose between competing versions of the truth, even if one party's version appears more credible or persuasive. *Id.* A fact is material if it has the potential to affect the outcome of the suit. *Id.* To survive a defendant's motion for summary judgment, the plaintiff must establish a prima facie case for every element of the plaintiff's cause of action. *Oceanic Inn, Inc., v. Sloan's Cove*, *LLC,* 2016 ME 34, ¶ 26, 133 A.3d 1021. "When a plaintiff has the burden of proof on an issue, a court may properly grant summary judgment in favor of the defendant if it is clear that the defendant would be entitled to a judgment as a matter of law if the plaintiff presented nothing more than was before the court" when the motion was decided. *Reliance Nat'l Indem. v. Knowles Indus. Servs., Corp.*, 2005 ME 29, ¶ 9, 868 A.2d 220.

## DISCUSSION

At the outset, the Court notes that the analysis of Byron's motion is somewhat different from the analysis of the Publisher Defendant's motion, which will be discussed in a separate order. Byron did not write, read or approve the newspaper article. Further, Byron maintains that he did not make some of the statements attributed to him in the article. As a result, this case is distinguished from cases in which the source admits making the statements published in a newspaper article. *See, e.g., Yohe v. Nugent*, 321 F.3d 35, 39 (1st Cir. 2003) ("[i]t is undisputed

4

that the articles accurately recounted" statements made by the source). The analysis of Byron's motion turns in large part on what Byron said to Good, not on what Good wrote in the article. As to what Byron said to Good, however, Prunier has little admissible evidence.[7] Prunier did not depose Byron or Good. Prunier was not present during Good's interview of Byron. At least as to the statements Byron denies making, Prunier's reliance on the newspaper article to establish a prima facie case is unavailing.

Under Maine law, a "communication is defamatory 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Bakal v. Weare*, 583 A.2d 1028, 1029 (Me. 1990) (quoting Restatement (Second) of Torts § 559 (Am. Law Inst. 1977)). In order for a plaintiff to have a viable claim for defamation, the plaintiff must show the following:

"(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."

Restatement (Second) of Torts § 558 (Am. Law Inst. 1977); *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991). To "avoid a judgment as a matter of law for the defendant[] on a given claim, [the plaintiff] must establish a prima facie case for each element of that claim." *Rippett v. Bemis*, 672 A.2d 82, 85 (Me. 1996).

---

[7] Apart from attempting, unsuccessfully, to qualify or dispute Byron's S.M.F., Prunier offers essentially no admissible evidence to establish that Byron made any statements that were false and defamatory. Prunier's Statement of Additional Facts is only five paragraphs long, and fails to offer any facts establishing that Byron made false and defamatory statements.

5

In her Complaint, Prunier alleges Byron (along with the Publisher Defendants), made four[8] false statements reflected in the newspaper article.[9] Paragraph 13 is the operative paragraph of the Complaint, and reads in its entirety as follows: "The following statements are false: 'been indicted by a grand jury for allegedly bilking an elderly Trenton man with dementia', 'took advantage of the victim by befriending him and convincing him to sell her a 6-acre property', 'he was absolutely flat broke … it was just a sad situation.'" Each of the statements will be considered in order. For the reasons set forth below, the Court concludes Prunier cannot establish a prima facie defamation claim as to Byron regarding any of these four statements.[10] Accordingly, summary judgment must be granted in favor of Byron.

**1. Been indicted by a grand jury for allegedly bilking an elderly Trenton man with dementia.**

Prunier has provided no evidence that Byron (as distinct from the Publisher Defendants) made this statement. At a minimum, a claim in "defamation requires proof, by a preponderance of the evidence, of . . . a false and defamatory statement concerning another." *Waugh v. Genesis Healthcare LLC*, 2019 ME 179, ¶ 10, 222 A.3d 1063 (quoting *Rippett*, 672 A.2d at 86); Restatement (Second) of Torts § 558 (Am. Law Inst. 1977). Prunier cannot cross this threshold

---

[8] In contrast to Byron, the Publisher Defendants treat this same collection of statements as three, rather than four, because the Publisher Defendants consider the following language to constitute a single statement, rather than two statements: "he was absolutely flat broke … it was just a sad situation." The outcome of the analysis with regard to Byron is the same either way.

[9] Prunier lumps Byron in with the Publisher Defendants, and does not distinguish between false statements allegedly made by Byron, and those made by the Publisher Defendants. The Court therefore considers all of the statements.

[10] The parties argue over whether a fifth statement from the newspaper article warrants analysis: "Byron estimates the total loss at more than $200,000." Prunier did not allege in her Complaint that this was one of the false and defamatory statements on which she was proceeding against Byron. *See* Complaint ¶ 13. Prunier also fails to include the statement in her Additional Statement of Material Fact. The Court is therefore reluctant to allow Prunier to rely on the statement to avoid summary judgment. But even if the Court considers the statement, the result is no different. It is undisputed that the amount of loss Byron attributed to Harriman was unclear. Prunier's attempt to establish the falsity of the statement (or at least generate a dispute of fact) by focusing on only the value of the real estate she purchased is unsuccessful, because she fails to address the magnitude of the losses alleged to have also been caused by Harriman.

element of her defamation claim against Byron, because she cannot show Byron made the statement to Good (or to anyone else). Accordingly, summary judgment is granted to Byron regarding this statement.

## 2. Took advantage of the victim by befriending him and convincing him to sell her a 6-acre property with a right-of-way to the shore, valued by the town at $77,000.

Byron denies making this statement, and Prunier has failed to come forward with any admissible evidence establishing that Byron made the statement. Byron admits telling Good that Prunier and Royal were friends, but that statement is not defamatory (nor does Prunier contend it is false). As the author of the newspaper article, Good may or may not have stitched together, interpreted, paraphrased, or embellished various things Byron said during the interview, but Byron cannot be held liable for the article written by Good. Byron denies making the statement alleged, and Prunier is unable to even raise a dispute of material fact regarding the statement. Once again, Prunier is unable to get past the defamation threshold as to this statement. *Id.* Accordingly, summary judgment is granted to Byron regarding this second statement.

## 3. He was absolutely flat broke.

Byron admits making this statement to Good, but asserts the statement cannot be defamatory because it refers to Royal, not to Prunier. Moreover, Byron made the statement in the context of discussing Harriman, not Prunier. Prunier argues that any reasonable reader of the newspaper article would interpret the statement as meaning that she was the cause of Royal being "absolutely flat broke" and the statement is therefore defamatory to her. Prunier, however, conflates her claim against the Publisher Defendants with her claim against Byron. Prunier has not come forward with any evidence disputing Byron's affidavit testimony that when Byron made the statement to Good, Byron was referring to Royal in the context of a discussion regarding Harriman. It is fundamental that a plaintiff "must prove that [the statement] was published of and

7

concerning [her]." Restatement (First) of Torts § 613 cmt. d (Am. Law Inst. 1938); *Lester*, 596 A.2d at 69.  This Prunier fails to do.  Accordingly, summary judgment is granted to Byron regarding this third statement.

**4. It was just a sad situation.**

Byron admits making this statement to Good, but asserts that this statement was merely an opinion and is incapable of being proven as true or false.  Additionally, Byron argues that "it" refers to Royal's situation as a whole, including Harriman's status as a family member, and not specifically to Prunier.  Conversely, Prunier argues that because the previous statements are defamatory, Byron stating that it was a "sad situation" is defamation by implication.

As the Court has already determined, the prior statements do not form the basis of a defamation claim against Byron.  Thus, as to Byron, there is no defamation by implication.  Moreover, in order to have a successful defamation claim, the first element requires a "false" statement which must be "an assertion of fact, either explicit or implied, and not merely an opinion." *Lester*, 596 A.2d at 69; *see* Restatement (Second) of Torts § 558 (Am. Law Inst. 1977).  The question of whether an "allegedly defamatory statement is a statement of fact or opinion is a question of law." *Caron v. Bangor Publ'g Co.*, 470 A.2d 782, 784 (Me. 1984).  When determining whether a statement is a fact or an opinion, the court considers the "surrounding circumstances" and whether "the maker of the statement did not intend to state an objective fact but intended rather to make a personal observation of the facts." *Lester*, 596 A.2d at 71.  Should "the court conclude[] that the average reader could not reasonably understand the statement as anything other than an opinion, no genuine issue of material fact exists and summary judgment . . . may be entered" for the defendant. *Caron*, 470 A.2d at 784.

8

Looking at the nature of the statement and its context, including that family member Harriman was in criminal proceedings, the Court agrees with Byron that his statement is an opinion and is not actionable. Under the circumstances, stating that something is a "sad situation" cannot reasonably be construed as an objective fact. Even if Prunier had shown that the previous statements were all made by Byron, and were defamatory, this particular statement would still be considered nondefamatory because it is a subjective evaluation. There is nothing in the summary judgment record to indicate that Byron was specifically referring to Prunier or implying objective, negative facts about her. The Court is compelled to find that this was merely a statement of opinion and not actionable. Accordingly, summary judgment is granted to Byron regarding this fourth statement.[11]

## CONCLUSION

Without evidence to generate a genuine issue of material fact, Prunier's defamation claim against Byron cannot survive summary judgment. For all the foregoing reasons,[12] the Court grants Byron's motion, and enters summary judgment in his favor on the Complaint.

The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

So Ordered.

Dated:_August 5, 2020____                    _____/s_____
                                             Michael A. Duddy
                                             Judge, Business and Consumer Court

[11] The Court notes that Prunier contends other language in the newspaper article is defamatory and can be attributed to Byron. Specifically, Prunier contends that Byron is responsible for use of the words "dementia," "victim," "thefts," and "raised red flags with the family." (Pl.'s Opp'n to Def.'s Mot. Summ. J. 2.) However, Prunier has provided no prima facie evidence in the summary judgment record to establish that Byron uttered those words or phrases.

[12] Because the Court grants Byron summary judgment on other grounds, the Court does not address Byron's argument that he is entitled to a conditional privilege because Prunier is a limited public figure.

STATE OF MAINE                                    BUSINESS & CONSUMER DOCKET
CUMBERLAND, ss.                                   DOCKET NO. BCD-CV-19-03


DR. KATHLEEN T. PRUNIER,              )
                                      )
        Plaintiff                     )
                                      )
v.                                    )
                                      )        ORDER DENYING DEFENDANTS'
MARK GOOD, EARL D. BRECHLIN,          )        MOTIONS TO DISMISS
THE MOUNT DESERT ISLANDER,            )
BOB BYRON, JENNIFER SARGENT,          )
STONY CREEK BROADCASTING, LLC &       )
STAR 97.7 AND STU MARCKOON, and       )
Does 8-50,                            )
                                      )
        Defendants                    )


Plaintiff Dr. Kathleen Prunier filed a Complaint alleging that Defendants Mark Good ("Good"), Earl Brechlin ("Brechlin"), the Mount Desert Islander ("MDI"), Bob Byron, Jennifer Sargent, Stony Creek Broadcasting, LLC, (SCB") & Star 97.7, and Stu Marckoon ("Marckoon") defamed Plaintiff. Defendants Good, Brechlin, and MDI; Sargent; and SCB & Star 97.7 and Stu Marckoon "Marckoon") have all filed Motions to Dismiss. The Court heard oral argument on the motions on April 5, 2019 in Portland, Maine. Defendants Good, Brechlin, and MDI were represented by Christopher Uphouse, Esq.; Ms. Sargent was represented by Daniel Pileggi, Esq.; and SCB & Star 97.7 and Marckoon were represented by Sigmund Schutz, Esq.[1] Plaintiff was self-represented. For the reasons discussed below, the Court denies the Motions to Dismiss.

---

[1] While Bob Byron did not file a motion to dismiss, his attorney, Frederick Costlow, Esq., was present for oral argument.

1

## FACTS

On October 6, 2016, a grand jury indicted Plaintiff with one count of theft by deception (17-A M.R.S. § 354) (Class B).[2] (Good et al.'s Mot. Dismiss Ex. A.) On or about October 19, 2016, Defendants Good, Brechlin, MDI and Robert Byron contributed to, edited contents of and published an article titled "Two charged in elder theft," which referred to Plaintiff, Plaintiff's business and location. (Pl.'s Compl. ¶¶ 11-12.) The article included the following statements: "been indicted by a grand jury for allegedly bilking an elderly Trenton man with dementia," "took advantage of the victim by befriending him and convincing him to sell her a 6-acre property," and "he was absolutely flat broke . . . [.] It was just a sad situation." *Id.* ¶ 13. On or about October 19, 2016, Defendant Sargent republished MDI's article on her Facebook page and added above the article "THIS IS WHY I TELL EVERYONE to never use the Veterinarian in Town Hill. She murders animals and now she robs the elderly." *Id.* ¶ 18. On or about October 20, 2016, Defendants SCB & Star 97.7 and Marckoon broadcasted a news clip titled "Elder Theft" and published the same information on their web page. *Id.* ¶ 25. The broadcast referred to Plaintiff and her business by name. *Id.* ¶ 26. In the broadcast, Defendants made the following statements: that Plaintiff was "accused of taking advantage of an elderly Trenton resident" and "[t]he indictment charges that Prunier purchased storefront property worth more than $100-thousand dollars." *Id.* ¶ 27.

---

[2] The Court takes judicial notice of the indictment, which stated:

> On or about July 12, 2014, in the County of Hancock, State of Maine, Defendant Kathleen T. Prunier did commit theft by obtaining or exercising control over the property of Richard Royal, such property consisting of real estate with a value in excess of $10,000, with the intent to deprive Richard Royal thereof, and as a result of deception, in that the Defendant did intentionally create or reinforce the impression that the assessed value of the real estate was less than $10,000, which impression was false and which Defendant did not believe to be true, all in violation of 17-A MR.S. § 354(1)(B)(1).

STANDARD OF REVIEW

When a court examines a motion to dismiss, only the facts alleged in the complaint are considered and the complaint is "'examine[d] [] in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory.'" *Argereow v. Weisberg*, 2018 ME 140, ¶ 12, 195 A.3d 1210 (quoting *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 7, 843 A.2d 43). This process "tests the legal sufficiency of the allegations in a complaint, not the sufficiency of the evidence the plaintiffs are able to present." *Barnes v. McGough*, 623 A.2d 144, 145 (Me. 1993) (citation omitted). A complaint should only be dismissed when it "appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that [she] might prove in support of [her] claim." *Argereow*, 2018 ME 140, ¶ 12, 843 A.2d 43 (quotation marks omitted).

For a complaint alleging defamation to survive a motion to dismiss, the complaint needs to allege the following: "a false and defamatory statement concerning another; an unprivileged publication to a third party; fault amounting at least to negligence on the part of the publisher; and actionability irrespective of special harm or the existence of special harm caused by the publication." *Warren v. Preti, Flaherty, Beliveau & Pachios, Llc, Marcus, Cregg & Mistretta, P.A., & Ace Hardware Corp.*, BCD-CV-11-28, 2011 Me. Bus. & Consumer LEXIS 31, at *5-6 (Oct. 25, 2011) (denying a motion to dismiss a defamation count as the plaintiff had alleged elements of a defamation claim and the alleged judicial privilege by one of the defendants was a question of fact); *see also Liberty v. Bennett*, No. CV-09-459, 2010 Me. Super. LEXIS 2 (Jan. 19, 2010) (denying motion to dismiss the defamation count as the plaintiff sufficiently alleged elements of defamation and the court "construed the facts

3

liberally in favor of the Plaintiff, as required at this stage of the proceedings . . . .").

Additionally, the material words essential to the allegedly defamatory statements must be

pled with sufficient precision to put the defendant on notice. *Picard v. Brennan*, 307 A.2d

833, 835 (Me. 1973). Nevertheless, as the cases demonstrate, given the standard of review

at this stage of the proceeding, and the relatively liberal approach otherwise embodied in

notice pleading, it can be difficult for a defendant to prevail on a motion to dismiss in a

defamation action in which the allegedly defamatory statements are pled with precision.

ANALYSIS

Good, Brechlin, and MDI's Motion to Dismiss

Plaintiff's Complaint states that the Defendants have made false statements which are

"libelous on its face" which mischaracterized Plaintiff's relationship with the victim, the

value of the land purchased by Plaintiff, and the "personality, belief and values of the

[P]laintiff" and the statements were published to various third parties and is still available

in its digital format. (Pl.'s Compl. ¶¶ 13-15.) Plaintiff asserts that the publication is not

privileged as it was published with malice and ill-will. *Id.* ¶ 17. Plaintiff alleges various

damages, such as loss of her business, reputation, shame, scorn, humiliation mortification

[sic], injury to her feelings, and loss of a contract for a book publication. *Id.* ¶ 16.

Defendants do not argue that Plaintiff has failed to plead the offending statements

with precision, which she has obviously done. Defendants argue that the truthful reporting

of available records is privileged under the First Amendment, the statements are

substantially true, other statements are mere opinion, and that Plaintiff has failed to plead

sufficient facts establishing negligence. While the media has a right to accurately report on

criminal proceedings, the statements regarding an elderly person with dementia are

4

nowhere to be found in the four corners of the indictment. Viewed in the light most favorable to Plaintiff's cause of action, the statements can be viewed as defamatory. At least some of the statements appear to be provable as objectively true or false, and thus can be viewed as statements of fact and not mere opinion. *See Caron v. Bangor Pub. Co.*, 470 A.2d 782, 785 (Me. 1984). Maine law does recognize the "substantial truth" doctrine at the summary judgment stage. *See McCullough v. Visiting Nursing Serv. of So.* Maine, 1997 ME 55, ¶ 10, 691 A.2d 1201. However, at the motion to dismiss stage, Defendants cannot prevail on their argument that the statements are substantially true. The Complaint adequately alleges the statements are false, and the Court must accept those allegations. The question of privilege is one of fact, and thus also not amenable to decision in Defendants' favor at this stage of the proceeding.

Finally, even though Plaintiff does not succinctly use the word negligent in the Complaint, Plaintiff does allege malice and ill-will. Accordingly, Plaintiff has alleged "fault amounting at least to negligence on the part of the publisher." Indeed, when the Complaint is viewed as a whole and construed in Plaintiff's favor, the Court finds that Plaintiff has sufficiently pled the required elements for defamation. Thus, Defendants' motion to dismiss is denied.

Jennifer Sargent's Motion to Dismiss

Plaintiff has claimed that Ms. Sargent's Facebook statement and re-publishing of MDI's article was entirely false, is libelous on its face, and was published to third parties which was seen, read and shared, "at least to othersocial [sic] media users." *Id.* ¶¶ 20-22. Plaintiff's Complaint states that the publication was not privileged as it was published by Sargent with malice and ill-will and a desire to injure Plaintiff. *Id.* ¶ 24. Plaintiff alleges Ms. Sargent has caused Plaintiff to suffer loss of reputation, shame, mortification, humiliation,

misunderstanding, loss of business and income, and injury to her feelings. *Id.* ¶ 23.

Defendant does not argue that Plaintiff has failed to sufficiently plead the defamatory statements. Defendant argues that the MDI article is privileged and not actionable, accurately reported the indictment, the contract between Plaintiff and the victim, and the value of the property. Likewise, Defendant avers that the statements are substantially true or are an expression of opinion. However, for the reasons expressed above, the Court accepts the factual allegations in the Complaint as establishing the falsity of the statements, Plaintiff has sufficiently alleged the elements of defamation against Sargent, and Sargent's arguments cannot prevail at the motion to dismiss stage of the proceeding. Accordingly, Sargent's motion to dismiss is denied.

<u>SCB & Star 97.7 and Marckoon's Motion to Dismiss</u>

Plaintiff's complaint asserts that Defendants' broadcasted statements of Plaintiff being "accused of taking advantage of an elderly Trenton resident" and "[t]he indictment charges that Prunier purchased storefront property worth more than $100-thousand dollars" are false, defamatory and slanderous. *Id.* ¶ 27. Further, that the broadcast and written publication on Defendants' web page are slanderous and libelous on their face and were published to third parties when the segment was broadcasted and when readers visited the web page. *Id.* ¶¶ 28-29. Plaintiff asserts that the publication was not privileged as Defendants' broadcasted and published the statements with indifference, unethical and malicious ill will towards Plaintiff and through Defendants' failure to fact check and contact Plaintiff for additional information. *Id.* 31. Plaintiff claims Defendants' actions have caused Plaintiff to suffer reputational loss, loss to her business, loss of a book publication, shame, mortification, embarrassment, humiliation, and injury to her feelings. *Id.* 30.

Defendants do not argue that Plaintiff has failed to plead the material words with sufficient precision. Defendants instead argue the statements are substantially true, that there is no reputational difference between reporting the value of the property allegedly wrongfully obtained as $100,000 versus $10,000, and Defendants have a First Amendment privilege to truthfully report. The Court finds that there is a significant difference to reputation between reporting that a person has taken advantage of an elderly person to obtain a $100,000 property versus a $10,000 property. Further, for the reasons expressed above, the Court accepts the factual allegations in the Complaint as establishing the falsity of the statements, Plaintiff has sufficiently alleged the elements of defamation against Defendants, and Defendants' arguments cannot prevail at the motion to dismiss stage of the proceeding. Accordingly, Defendants' motion to dismiss is denied.

## CONCLUSION

The clerk will make the following entries as the Decision and Order of the Court:

1. Defendants Good, Brechlin's and MDI's Motion to Dismiss is **DENIED**.

2. Defendant Sargent's Motion to Dismiss is **DENIED**.

3. Defendants SCB & Star 97.7 and Marckoon's Motion to Dismiss is **DENIED**.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

So Ordered.

Dated: April 26, 2019          _____/s_____
                           Michael A. Duddy
                 Judge, Business and Consumer Docket